IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02716-WJM-MEH

LISA KAY BRUMFEIL,

       Plaintiff,

v.

U.S. BANK,
LARRY CASTLE, in his individual and corporate capacities,
CASTLE STAWIARSKI, and
DOES 1-100,

       Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

       Before the Court is a Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) filed by Defendants Larry Castle and Castle Stawiarski ("CS Defendants") [filed November 2, 2012; docket #9]. The motion has been referred to this Court for recommendation [docket #10]. The motion is fully briefed, and the Court finds oral argument would not materially assist in adjudicating the motion. For the reasons that follow, the Court respectfully recommends that Defendants' motion be **granted in part and denied in part** as set forth herein.[1]

---

       [1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and

# BACKGROUND

## I.      Relevant Facts

1.      On November 14, 2006, Plaintiff, Lisa Kay Brumfeil, executed a promissory note in favor

of First Franklin, a Division of National City Bank in the principal amount of $169,350.00 ("Note").

Exhibit A to Motion, docket #9-1; *see also* Complaint, docket #1 at 25-28.

2.      The Note was secured by a deed of trust on the same date as the Note and recorded on

November 27, 2006 at Reception No. B6166228 in the real property records of Arapahoe County,

Colorado ("Deed of Trust").  Exhibit B, docket #9-2.

3.      The Deed of Trust currently encumbers the real property legally described and commonly

known as 1499 S. Jasper Street, Aurora, CO (the "Property").  *Id.* at 3.

4.      Upon the Plaintiff's alleged default under the terms of the Note and Deed of Trust for failure

to make timely loan payments, Defendant U.S. Bank retained Defendant Castle Stawiarski ("CS")

to represent its interests, and CS initiated a nonjudicial foreclosure action with the Arapahoe County

Public Trustee ("Public Trustee") by submitting a Notice of Election and Demand ("NED") (Exhibit

C, docket #9-3) and Statement of Qualified Holder ("Statement") (Exhibit D, docket #9-4).

5.      The Public Trustee recorded the NED on September 9, 2011 at Reception No. D10886468,

in the real property records of Arapahoe County, Colorado.  Docket #9-3.  The Public Trustee

designated the foreclosure as Sale No. 2701-2011 ("Foreclosure Sale").  *Id.*

6.      On October 28, 2011, U.S. Bank, through CS, filed a Motion for Order Authorizing Sale with

---

recommendations within fourteen (14) days after being served with a copy may bar the
aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or
adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United
States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164
(10th Cir. 1986).

the Arapahoe County District Court in Case No. 2011CV204001 ("Rule 120 proceeding").

7.      On November 15, 2011, the Plaintiff filed a response to U.S. Bank's motion and a motion to dismiss the Rule 120 proceeding arguing that U.S. Bank failed to demonstrate it was the "lawful, rightful owner" of the Note and had no standing to foreclose.  Exhibit H, docket #21-1.

8.      On December 30, 2011, in the United States Bankruptcy Court for the District of Colorado, the Plaintiff filed a petition for protection under Chapter 7 of the United States Bankruptcy Code. Exhibit E, docket #9-5.  The case was identified as Bankruptcy Petition No. 11-39881-HRT.  *Id.*

9.      On April 24, 2012, the bankruptcy court entered an Order of Discharge in the Plaintiff's bankruptcy case.  Exhibit F, docket #9-6.

10.     On May 29, 2012, the bankruptcy court accepted the trustee's final report and closed Plaintiff's bankruptcy case.  Exhibit G, docket #9-7.

11.     On December 7, 2012, Judge Mark Hannen in the Rule 120 proceeding issued an Order Authorizing Sale of the property at 1499 S. Jasper Street, Aurora, CO 80017, following a "review and hearing" of the matter.  Exhibit I, docket #21-2.

## II.      Procedural History

Plaintiff, proceeding *pro se*, initiated this action on October 12, 2012.  Plaintiff alleges generally that the CS Defendants conspired to deprive her of her Fourteenth Amendment rights by drafting and passing HB 1387, which allegedly eliminated the requirement that a lender demonstrate it is the real party in interest with standing to foreclose in Colo. R. Civ. P. 120 proceedings ("Rule 120 proceedings").  *See* Complaint, docket #1 at 3-4.  Plaintiff contends the CS Defendants drafted and passed the legislation to gain an unfair advantage over her and other homeowners and to advance their own financial interests.  *Id.* at 4.  Plaintiff asserts that the CS Defendants became

"state actors" pursuant to 42 U.S.C. § 1983 when they became "involved ... in the legislative process by drafting the legislation which amended the foreclosure statute." *Id.* Based upon these facts, Plaintiff alleges claims for due process violations, conspiracy pursuant to 42 U.S.C. § 1985(3), common law conspiracy, wrongful foreclosure, and negligent and intentional infliction of emotional distress. Plaintiff seeks recovery for attorney's fees and costs, injunctive relief, and compensatory and punitive damages against the Defendants. *Id.* at 14.

On November 2, 2012, the CS Defendants filed the present Motion to Dismiss[2] arguing that the Plaintiff filed a bankruptcy action after foreclosure proceedings commenced, and failed to list claims related to the foreclosure in her Chapter 7 bankruptcy petition. As such, any claims involving the foreclosure are the property of the bankruptcy estate and only the trustee of the estate may seek to recover monetary losses pursuant to such claims. Thus, CS Defendants contend the Court lacks subject matter jurisdiction because the Plaintiff is not the real party in interest in this action. CS Defendants further argue that Plaintiff's claims for injunctive relief are barred by the Anti-Injunction Act and/or by the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).

Plaintiff responds that she was not aware of all essential facts concerning the CS Defendants' alleged improper conduct until after the bankruptcy action. Plaintiff contends that bankruptcy courts have limited jurisdiction and that her constitutional claims should be adjudicated in a district court before a jury, rather than in a bankruptcy court. Plaintiff further argues that the facts in *Eastman v. Union Pacific R.R.*, 493 F.3d 1151 (10th Cir. 2007), relied upon by the CS Defendants, are distinguishable since she did not file this lawsuit prior to the bankruptcy action. Moreover, Plaintiff asserts that the *Younger* abstention doctrine is inapplicable to this case because a Rule 120

_____

[2]Defendant U.S. Bank has not made an appearance in this case.

proceeding is an inadequate forum in which to adjudicate her constitutional claims.  Finally, Plaintiff describes in the remainder of her brief how she states plausible claims for relief for each of her seven causes of action.

CS Defendants reply that the majority of Plaintiff's response is non-responsive as it pertains to a Rule 12(b)(6) analysis for failure to state a claim.  Defendants assert that Plaintiff's claim of unconstitutionality is premised upon a mistaken belief that HB 06-1387 stripped her of a right to challenge U.S. Bank's standing with the Rule 120 proceeding; in fact, say the CS Defendants, Plaintiff raised the issue of U.S. Bank's standing in the Rule 120 proceeding both before and after the bankruptcy.  Nevertheless, in support of their Rule 12(b)(1) motion, Defendants argue the Plaintiff's assertion that she did not know all facts supporting her current claims is insufficient, since claims "sufficiently rooted in the pre-bankruptcy past" are properly considered part of the bankruptcy estate.  Defendants also contend that both the Anti-Injunction Act and *Younger* apply to preclude Plaintiff's claim for injunctive relief because, despite Plaintiff's stipulation as to the Order Authorizing Sale on December 7, 2012, the Plaintiff could have (and did) raise the standing issue in the Rule 120 proceeding.

Upon review of the motion and briefs in this case, the Court issued an order to the CS Defendants to show cause why the motion should not be denied without prejudice for seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(1), rather than pursuant to Fed. R. Civ. P. 12(b)(6) or 56. Defendants timely responded to the order on February 5, 2013 and, thus, the order is discharged and resolved as set forth below.

## LEGAL STANDARDS

I.     **Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear her claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to

evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted).  The present motion launches a factual attack on this Court's subject matter jurisdiction; therefore, should the Court find the motion is properly raised pursuant to Fed. R. Civ. P. 12(b)(1) (*see supra*), the Court will not presume the truthfulness of the Complaint's factual allegations and will allow evidence outside of the pleadings consistent with *Holt*.

## II.      Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

**DISCUSSION**

I.    **Procedure for Dismissal**

CS Defendants seek to dismiss this action based upon the Court's lack of subject matter jurisdiction.   As set forth above, this Court recently questioned CS Defendants' choice to seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1), because c---ourts have concluded that the issue in this case – whether the Plaintiff is the real party in interest – is not necessarily an issue of Article III standing.   That is, citing *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003), Judge Miller in this District determined that the question of whether a plaintiff or a bankruptcy trustee was the proper party to bring the claim was not an issue of Article III standing.   *Wilkerson v. Schirmer Eng'g Corp.*, 04-cv-00258-WDM-MEH, 2009 WL 211488, at *2 n. 2 (D. Colo. Jan. 28, 2009); *see also Barger*, 348 F.3d at 1292 (after concluding that plaintiff met all of the requirements for constitutional standing, the court found that "[t]he issue is really about who can litigate the claim, [plaintiff] or the Trustee.").

Defendants respond that although *Wilkerson* and *Barger* are instructive on this issue, a recent Tenth Circuit case, while not directly on point, has found that "a dismissal for lack of standing can be at least colorably characterized as a dismissal for lack of subject matter jurisdiction."   *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012) (analyzing whether the court has jurisdiction to consider an appeal from the trial court's remand order based upon a lack of subject matter jurisdiction for the plaintiff's lack of standing).   Therefore, Defendants contend that a 12(b)(1) analysis is proper here.

This Court notes, however, that *Hill* and its supporting cases all analyze *Article III* standing when determining the jurisdictional question.   In fact, the court in *Hill* concedes that it has previously determined standing to be an essential component of the court's subject matter

8

jurisdiction.  *See id.* at 1224 ("[o]ur court has repeatedly characterized standing as an element of subject matter jurisdiction"); *see also Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008).  The party asserting the existence of subject matter jurisdiction bears the burden of proving such jurisdiction exists, including the burden of demonstrating adequate standing. *Id.* Thus, standing requires a plaintiff to allege, and ultimately prove, (1) he has suffered a concrete injury in fact; (2) a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) the plaintiff's injury likely will be remedied by the relief requested.  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008).

Here, the Court is concerned that a Rule 17(a) "real party in interest" issue does not implicate Article III and, thus, may not be a jurisdictional question.  To this concern, Defendants respond that, in fact, Article III standing may be challenged in this case.  Specifically, Defendants argue that the third element will not be met to the extent the Trustee, rather than the Plaintiff, is determined to be the real party in interest.  That is, if the Trustee should take the place of the Plaintiff for her claims for monetary damages, then "the [P]laintiff's injury likely will [*not*] be remedied by the relief requested." *See Sprint Commc'ns Co., L.P.*, 554 U.S. at 273-74.

The Court agrees.[3]  Here, Plaintiff seeks recovery for the costs of this lawsuit, attorney's fees, punitive damages, and compensatory damages for pain and suffering.  Complaint, docket #1 at 14.  If the Trustee steps in, the Plaintiff will not be recompensed personally for these alleged losses.  Therefore, the Court concludes that the "standing" issue in this case implicates Article III and, thus, is a jurisdictional question properly adjudicated as a factual attack pursuant to Fed. R. Civ.

---

[3]To the extent that the Court's conclusion conflicts with the opinions reached in *Barger* or *Wilkerson*, the Court notes that in *Barger*, unlike in this case, it was undisputed that the plaintiff's claims met all Article III standing requirements.  *See Barger*, 348 F.3d at 1292.

P. 12(b)(1).

## II.  Real Party in Interest to Bring Claims for Monetary Relief

Rule 17(a) of the Federal Rule of Civil Procedure requires that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  "[T]he 'real party in interest' is the one who, under applicable substantive law, has the legal right to bring suit."  *Fed. Deposit Ins. Corp. v. Gelderman Inc.,* 975 F.2d 695, 698 (10th Cir. 1992) (quoting *Boeing Airplane Co. v. Perry*, 322 F.2d 589 (10th Cir. 1963), *cert. denied*, 375 U.S. 984 (1964)).

When a party files for bankruptcy, all of the party's "legal or equitable interests" become the property of the bankruptcy estate (11 U.S.C. § 541(a)), and the bankruptcy trustee, not the party, becomes the real party in interest with respect to the claims (11 U.S.C. § 323(a), (b)).  "The bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims ... [t]hat duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor may have."  *Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007); *see also Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003) ("property of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy"); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.") (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).

"The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed."  *In re Coastal*

*Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999), *cert. denied*, 120 U.S. 936 (2000) (quoting *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 821 n. 17 (Bankr. N.D. Ill. 1995)).

"When the bankruptcy action is closed, 'properly scheduled' assets not otherwise administered revert 'to the debtor through abandonment under 11 U.S.C. § 554(c).'" *Clark v. Trailiner Corp.*, No. 00-5020, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000) (unpublished) (quoting *Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995)). But, "[a]ssets not properly scheduled remain property of the bankruptcy estate." *Id.* (citing 11 U.S.C. § 554(d)). "As a result, the debtor loses all rights to enforce any unscheduled legal claim in his own name." *Id.* (citing *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir. 1991)).

In this case, Plaintiff seeks relief in the form of compensatory and punitive damages against the CS Defendants for alleged violations of the due process and equal protection clauses of the Fourteenth Amendment, 42 U.S.C. § 1985(3) for conspiracy; fraud (wrongful foreclosure), common law conspiracy, and negligent and intentional infliction of emotional distress. For these claims, Plaintiff alleges the CS Defendants conspired in drafting and "pushing" the legislation – HB 06-1387 – that amended the foreclosure statute to prevent Plaintiff's ability to raise a "real party in interest" defense in the Rule 120 proceeding concerning the foreclosure of her property. Plaintiff contends that, as a result, she has been deprived of due process and equal protection, has been party to a wrongful foreclosure, and has suffered severe emotional distress.

Defendants argue in the present motion that Plaintiff's claims against them arose prior to her bankruptcy, which she initiated on December 30, 2011, and thus belong to the bankruptcy estate. Apparently, in or about 2011, Plaintiff defaulted on loan payments for her real property and the CS

Defendants initiated a non-judicial foreclosure action (Rule 120 proceeding) on behalf of the alleged note holder, U.S. Bank.   On October 28, 2011, the CS Defendants filed a Motion for Order Authorizing Sale in Arapahoe County District Court.   On November 15, 2011, the Plaintiff filed a written response to the motion and a motion to dismiss arguing that U.S. Bank failed to prove it was the true holder of the note and real party in interest with respect to the foreclosure action.  *See* docket #21-1.   Then, more than a year later on December 7, 2012, Judge Hannen issued an Order Authorizing Sale finding that Plaintiff conveyed to the Arapahoe County Public Trustee the real property described in the related Deed of Trust, and concluding that a reasonable probability exists to find default, that venue is proper and that all requirements have been met to authorize sale of the real property.   Docket #21-2.

To the extent the Defendants argue Plaintiff's claims accrued before the filing of her bankruptcy petition solely by her assertion of the "real party in interest" defense during the Rule 120 proceeding, this Court disagrees.   Plaintiff does not raise that defense in this action against the CS Defendants.   Rather, Plaintiff contends the CS Defendants drafted legislation that ultimately impeded her ability to raise the "real party in interest" defense during the Rule 120 proceeding. Thus, the question here is whether Plaintiff's claims concerning the drafting of the legislation arose prior to December 30, 2011.

The Plaintiff does not dispute that HB 06-01387 was passed and its amendments to Colorado's statutory non-judicial foreclosure procedures became effective January 1, 2008.  *See In re Durwick, LLC*, No. 11-31267 ABC, 2012 WL 2046877, at *2 n. 3 (Bankr. D. Colo. June 1, 2012). Accordingly, taking as true that the CS Defendants drafted portions of, or the entire, bill, such conduct occurred before January 1, 2008, which in turn occurred well before December 30, 2011.

12

Also, the foreclosure action (in which Plaintiff contends she was deprived of constitutional rights) commenced in October 2011 and the Plaintiff filed a response and motion to dismiss the action in November 2011.  Accordingly, given this information, it appears the Plaintiff's claims arose well in advance of the time she filed her bankruptcy petition.  *See Clementson v. Countrywide Fin. Corp.*, 464 F. App'x 706, 711 (10th Cir. Feb. 7, 2012) (affirming trial court's finding that the defendant's conduct, as described in the complaint, occurred prior to the plaintiff's filing of a petition for bankruptcy).

However, Plaintiff contends that, unlike in the cases cited by Defendants, her lawsuit was not pending at the time she filed her bankruptcy petition.  Plaintiff is correct with respect to *Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151 (10th Cir. 2007) and *In re: Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), in which the plaintiffs filed lawsuits either before the petition or between filing the petition and filing the bankruptcy schedules.  Thus, because she filed her lawsuit well after the bankruptcy proceeding, Plaintiff argues there is no indication that she had knowledge of her claims on December 30, 2011.  The Court disagrees; in *Clementson*, the Tenth Circuit affirmed a finding that the plaintiff was obligated to disclose his claims in a bankruptcy proceeding filed after the Rule 120 foreclosure proceeding, but before he filed the lawsuit seeking to recover for the claims.  464 F. App'x at 711; *see also In re Okan's Foods, Inc.*, 217 B.R. 739, 756 (E.D. Pa. 1998) (finding that debtor failed to disclose constitutional claims in Chapter 11 bankruptcy schedules, although adversary lawsuit filed nearly a year after bankruptcy plan was approved).  Therefore, the Plaintiff is not excused from non-disclosure simply because she did not file an action bringing her claims before she filed her bankruptcy petition.

Plaintiff further argues that she did not know "all of the essential facts" necessary to bring

this lawsuit at the time she filed her bankruptcy petition.  Plaintiff's argument is unavailing.  "Courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken 'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *Eastman*, 493 F.3d at 1157 (quoting *In re Coastal Plains*, 179 F.3d at 210).  With respect to knowledge, "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains*, 179 F.3d at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)) (internal quotations omitted).

Here, the Court concludes the Plaintiff had sufficient information to know of her claims at the time she filed her bankruptcy petition on December 30, 2011.  The record reflects that the Plaintiff was notified and responded to the foreclosure action in October and November 2011.  In her response, Plaintiff argued that U.S. Bank was not the true note holder.  Attached to her response and motion are copies of written communications between the Plaintiff, Defendant Castle Stawiarski and others, dating back to July 28, 2011, in which the Plaintiff cites statutes and uses legal jargon seeking verification of the true holder of the note.  *See* docket #21-1.  In fact, in September 2011, Plaintiff addressed to several attorneys at Castle Stawiarski a "Demand for Statement of Claim" seeking verification of the "true holder in due course and real party of interest" in which Plaintiff demands a response within 10 days stating, "[a] non-response will be a default and your admission that you and your firm have knowingly attempted to steal my home and collect money from me on the basis of constructive fraud."  *Id.* at 25-29.  These communications, motion and response brief

14

(even if some or all of the content may be neither accurate nor binding) demonstrate Plaintiff's knowledge of and willingness to learn and research real property laws and the foreclosure process well before December 30, 2011 when she filed her bankruptcy petition.  The Plaintiff does not argue that the facts underlying the conduct she alleges here – the CS Defendants' drafting and lobbying of HB 06-1387 – were somehow unavailable to her until after her bankruptcy proceeding.[4]

Furthermore, in her Complaint, in which she incorporates by reference all allegations made in the pleading, Plaintiff "alleges that she has had to resort to bankruptcy protection and has incurred cost[s]."  Courts have concluded that plaintiffs who claim the alleged unlawful conduct forced them into bankruptcy have sufficient knowledge to disclose any claims based upon the alleged unlawful conduct in their bankruptcy schedules.  *See In re Coastal Plains*, 179 F.3d at 211 (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996), which distinguished the plaintiff in *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F. 2d 414 (3d Cir. 1988) who "had knowledge of its claim when it filed for bankruptcy because the 'gravaman of its case against the bank was that the bank's actions were responsible for forcing the debtor into bankruptcy.'") (internal brackets omitted).  Therefore, the Court concludes that Plaintiff's "known" claims accrued before she filed her bankruptcy action.

---

[4]In fact, Plaintiff attaches a copy of an article from the Denver Post, dated March 14, 2012, concerning the "death" of a Colorado bill that would require banks and lenders to prove they have the right to foreclose.  Docket #20-1.  Apparently, the bill "sought to reverse a Colorado law passed six years ago in which foreclosures could be processed with only the signature of a lawyer claiming the lender he represented had the right to do so."  *Id.* at 2.  A former attorney with Defendant Castle Stawiarski is quoted in the article saying that "the law allowed [him] to foreclose on a property with just the stroke of [his] pen, whether this bank was the real party of interest or not."  *Id.*  It is unclear whether Plaintiff saw this March 14, 2012 article at the time it was published, but the bankruptcy proceeding was not completed until April 24, 2012.

Nevertheless, a cause of action that accrues **after** the date of the bankruptcy filing may still be considered part of the bankruptcy estate where the claim "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." *See Segal v. Rochelle,* 382 U.S. 375, 380 (1966); *see also In re Alvarez,* 224 F.3d 1273, 1279 (11th Cir. 2000) (finding that malpractice claim was sufficiently rooted in the plaintiff's pre-bankruptcy past because the attorney-client relationship giving rise to the claim was formed pre-petition).  Here, it cannot be disputed that the CS Defendants' challenged conduct occurred pre-bankruptcy, and there is nothing in the record indicating that the conduct would impair or impede the Plaintiff's ability to start fresh upon completion of the bankruptcy proceeding.

Plaintiff also argues that a bankruptcy court is an improper forum in which to bring her constitutional and state law claims.  Regardless of whether this is true, there is no attempt here by Defendants to remove this action to a bankruptcy court; rather, the question here is *who* is the real party in interest *before this Court* to bring the claims alleged in the Complaint.

The Plaintiff does not dispute that she failed to disclose her claims against the CS Defendants in her bankruptcy schedules or at any time during the bankruptcy proceeding.  Therefore, the Court concludes that Plaintiff's claims for monetary relief are the property of the bankruptcy estate and that the trustee is the real party in interest to bring such claims.  Accordingly, this Court respectfully recommends that the District Court grant the CS Defendants' motion to dismiss without prejudice Plaintiff's monetary claims against them.

## IV.   Real Party in Interest to Bring Claims for Injunctive Relief

However, because requests for injunctive relief typically add nothing of value to a bankruptcy estate, a plaintiff ordinarily will remain the real party in interest with respect to claims

for injunctive relief.  *See Barger*; 348 F.3d at 1297; *see also Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1289 (11th Cir. 2002) ("[t]he trustee and creditors are interested [only] in the debtor's property that can add anything of value to the estate.").

Here, the CS Defendants do not dispute that Plaintiff is the real party in interest to bring her claims for injunctive relief.  The Court notes that Plaintiff's Complaint is vague concerning her request "for injunctive relief" set forth in the prayer for relief.  *See* Complaint, docket #1 at 14. Plaintiff titles her seventh cause of action, "5th Amendment Violation and Injunction," but mentions nothing in her allegations concerning any injunctive relief she seeks.  Construing Plaintiff's pleading liberally, the Court must conclude that Plaintiff seeks injunctive relief through her "due process," "equal protection" and "wrongful foreclosure" claims and seeks an order enjoining the Defendants from completing the foreclosure of her property.  Since the filing of the Complaint and the present motion, however, the record reflects that the Rule 120 court issued an order authorizing sale of the real property upon the Plaintiff's conveyance (whether by stipulation as Defendants contend or otherwise) of the property to the public trustee on or about December 7, 2012.[5]  Therefore, it is unclear whether the Plaintiff still seeks the injunctive relief described above.  Nevertheless, to the extent any claims for injunctive relief remain in this case, the Court will proceed to analyze the Defendants' arguments.

Here, the CS Defendants argue that the Court lacks subject matter jurisdiction to hear any claims for injunctive relief in this case based upon the Anti-Injunction Act and/or the *Younger*

---

[5]Plaintiff mentions that, "[o]n December 10, 2012, [Plaintiff] contested the court's decision to issue an order of sale."  Docket #20 at 14.  However, Plaintiff does not explain how or why or under what authority she contested the order, and she has provided no status or copies of documents concerning this "contest."

abstention doctrine.  Plaintiff responds that her constitutional claims fall within the exception to the application of the Anti-Injunction Act and that *Younger* is not applicable to her claims because a Rule 120 proceeding is not an adequate forum in which to hear Plaintiff's constitutional claims.

First, the Anti-Injunction Act provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  The Plaintiff does not dispute that claims other than those brought pursuant to 42 U.S.C. § 1983 are barred by the Anti-Injunction Act; however, the Plaintiff is correct that the Supreme Court determined in *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972) that 42 U.S.C. § 1983 is an Act of Congress that falls within the "expressly authorized" exception of the Anti-Injunction Act. Construing Plaintiff's Complaint liberally, the Court interprets the Plaintiff's allegations as follows: because the Plaintiff allegedly suffered violations of due process and equal protection in the Rule 120 proceeding, she seeks an order enjoining the proceeding.  The Court finds, therefore, that Plaintiff's § 1983 claims, to the extent they are properly pled, fall under one of the exceptions to the Anti-Injunction Act pursuant to *Mitchum*.

The question next becomes, then, whether the CS Defendants, neither of which appears facially to be a state actor, are properly named as defendants for Plaintiff's § 1983 claims.  Neither the Defendants nor the Plaintiff proffer any argument in the briefing concerning this question. However, Plaintiff alleges in her Complaint that "Larry Castle, of Castle Stawiarski LLC, became a state actor when he involved himself in the legislative process by drafting the legislation which amended the foreclosure statute effectively eliminating the standard of proof to obtain an unfair advantage over homeowners in the Rule 120 and [sic] which [Plaintiff] found her constitutional

18

rights interfered with."  Complaint, docket #1 at 4.  Plaintiff makes no argument concerning this allegation in the briefing nor supports her allegation with any case law.

"The ultimate issue in determining whether a person is subject to suit under § 1983 is whether the alleged infringement of federal rights is 'fairly attributable to the state.'" *Tarabishi v. McAlester Reg. Hosp.*, 827 F.2d 648, 651 (10th Cir. 1987) (quoting *Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982)).  The Court finds the question whether the CS Defendants are state actors is more properly adjudicated under a 12(b)(6) analysis rather than under the circumstances presented here.  Thus, the Court concludes that a determination as to whether Plaintiff's § 1983 claims for injunctive relief are barred by the Anti-Injunction Act is premature at this stage.  However, Plaintiff's claims for injunctive relief, other than those brought pursuant to § 1983, are barred by the Anti-Injunction Act and respectfully recommends that the District Court grant Defendants' motion to dismiss such claims without prejudice.

Defendants argue alternatively that Plaintiff's claims for injunctive relief are barred by the *Younger* abstention doctrine.  "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)).  *Younger* abstention requires that federal courts abstain from exercising jurisdiction when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Id.* (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).

Plaintiff first claims that abstention is improper because she alleges "the Rule 120 is a proceeding to enforce an alleged unconstitutional state statute" and *Younger* is not applicable under such circumstance.   However, it is unclear whether this claim purportedly challenging the constitutionality of a state statute, if properly pled, is or may be brought against the CS Defendants; therefore, Plaintiff's argument is not necessarily persuasive.   Nevertheless, Plaintiff also argues that the second element necessary for abstention – adequate forum – is not met because of the limited scope of a Rule 120 proceeding in which she would be unable to bring her constitutional claims. Plaintiff cites *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172 (10th Cir. 2012) for the proposition that "Rule 120 limits the scope of the hearing to issues regarding whether a default has occurred, making it permissible for the judge to refuse to hear matters outside of that scope." *See id.* at 1190.

Defendants counter that the Rule 120 proceeding "specifically provide[s] for the consideration of the plaintiff's standing challenge."   Reply, docket #21 at 7.   Again, however, Plaintiff does not raise a "standing challenge" against the CS Defendants in this case.   Rather, she contends that her due process and equal protection rights were violated by the CS Defendants' conduct in drafting and passing legislation that purportedly amended the Rule 120 process. Furthermore, while the Tenth Circuit has stated that a foreclosure proceeding is "precisely the type of case where federal courts out of concern of comity and the nature of our federal system properly refuse to exercise jurisdiction and intermeddle in the state court proceedings," *Horton v. Clark*, 1991 WL 240115, at *1 (10th Cir. Nov. 15, 1991), the *Horton* court was analyzing a case arising from a foreclosure in Oklahoma and the decision was issued well before the amendments to Rule 120 became effective in Colorado.

Here, the Court is not convinced that the *Younger* abstention doctrine is applicable.   Courts

since *Younger* have consistently analyzed the second element of the abstention doctrine by determining whether a plaintiff has the ability to raise her constitutional claims in "the ongoing proceeding." *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986) ("[w]e have also applied [the *Younger* abstention doctrine] to state administrative proceedings in which important state interests are vindicated, *so long as in the course of those proceedings* the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim") (emphasis added); *see also Juidice v. Vail*, 430 U.S. 327, 337 (1977) ("[a]ppellees need be accorded only an opportunity to fairly pursue their constitutional claims *in the ongoing state proceedings*") (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)) (emphasis added); *East West Transp., LLC v. Sopkin*, 371 F. Supp. 2d 1253, 1262 (D. Colo. 2005) (same). Here, it is undisputed that a Rule 120 proceeding is limited in scope; in fact, the rule describes the scope of the proceeding as follows:

> The scope of inquiry at such hearing shall not extend beyond the existence of a default or other circumstances authorizing, under the terms of the instrument described in the motion, exercise of a power of sale contained therein, and such other issues required by the Service Member Civil Relief Act (SCRA), 50 U.S.C. § 520, as amended. The court shall determine whether there is a reasonable probability that such default or other circumstance has occurred, and whether an order authorizing sale is otherwise proper under said Service Member Civil Relief Act, and shall summarily grant or deny the motion in accordance with such determination. Neither the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment.

Colo. R. Civ. P. 120(d). There is no indication that the court in a Rule 120 proceeding has the authority, or is required, to hear constitutional claims raised in response to a motion for order authorizing sale. In fact, a Rule 120 proceeding is considered to be "non-judicial" in nature. *Rosenfield*, 681 F.3d at 1190. Under such circumstances, the Supreme Court has expressed hesitation in applying *Younger*. *See Ohio Civil Rights Comm'n*, 477 U.S. at 627 n. 2 ("[o]f course,

if state law expressly indicates that the administrative proceedings are not even 'judicial in nature,' abstention may not be appropriate.") (citing *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229 237-39 (1984)).

Therefore, the Court concludes that any claims Plaintiff makes for an order enjoining Defendants from completing the foreclosure process pursuant to 42 U.S.C. § 1983 are not barred by the *Younger* abstention doctrine. Although all parties appear to agree that, at this time, the foreclosure proceedings are ongoing before the state court and the foreclosure laws and procedures are matters of state concern involving state interests, it is not certain that Plaintiff would have a full and fair opportunity to litigate her constitutional claims during the Rule 120 proceeding.

Accordingly, the Court recommends that the District Court deny the Defendants' motion to dismiss Plaintiff's § 1983 claims for injunctive relief, but grant the Defendants' motion to dismiss Plaintiff's remaining claims for injunctive relief without prejudice as barred by the Anti-Injunction Act.

## **CONCLUSION**

This Court recommends finding that Plaintiff lacks standing to bring the claims for monetary relief in this action and, thus, this Court lacks subject matter jurisdiction over the claims as pled. Further, Plaintiff's claims for injunctive relief are barred by either the Anti-Injunction Act or the *Younger* abstention doctrine. Accordingly, the Court RECOMMENDS that the District Court **grant in part and deny in part** the Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) filed by Defendants Larry Castle and Castle Stawiarski ("CS Defendants") [filed November 2, 2012;

docket #9] as set forth herein.[6]

Respectfully submitted at Denver, Colorado, this 27th day of February, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[6]The Court notes that Plaintiff filed a motion to amend her complaint on February 25, 2013.  Because the motion seeks to add a claim and two defendants, the Court concludes the disposition of the motion does not affect the Court's analysis in this Report and Recommendation.