**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-02716-WJM

LISA KAY BRUMFIEL,

    Plaintiff,

v.

U.S. BANK,
LARRY CASTLE, in his individual and corporate capacity, and
CASTLE STAWIARSKI, LLC,
ROBERT J. HOPP, in his and corporate and individual capacities,
CYNTHIA MARES, Public Trustee in her official capacity,
MERS, a division of MERSCorp, and
DOES 1-100,

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S REQUEST FOR
INTERIM PRELIMINARY INJUNCTION**

---

This matter is before the Court on Plaintiff's Petition for Emergency Temporary Restraining Order and Preliminary Injunction ("Petition"). (ECF No. 82.) Defendant U.S. Bank (the "Trust")[1] and Defendants Larry Castle and Castle Stawiarski LLC (the "Castle Defendants") (collectively "Defendants") have each filed a Response to the Petition. (ECF Nos. 86, 87.)

Upon review of the parties' briefing and relevant parts of the record on Plaintiff's request for a Emergency Preliminary Injunction and having heard the parties'

---

[1] For the purposes of this Petition, the Court recognizes Defendant U.S. Bank as Successor Trustee to Bank of America, N.A., which was in turn Successor Trustee to LaSalle Bank, N.A., as Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FF1 (the "Trust").

arguments at the hearing of May 6, 2013, the Court grants Plaintiff's Petition and issues an Interim Preliminary Injunction. An evidentiary hearing will be held on **May 15, 2013 at 9:00 a.m.** for the purposes of determining whether a Full Preliminary Injunction should be granted.

## I. BACKGROUND

Based upon the facts as presented in the parties' arguments at the May 6, 2013 hearing, the facts before the Court are as follows.

On or about November 14, 2006, Plaintiff entered into a mortgage loan transaction secured by her primary residence located at 1499 S. Jasper Street, Aurora, Colorado (the "Property"). (ECF No. 86 at 1.) The terms of the loan for the principal sum of $169,350.00 were memorialized in a promissory note executed on November 14, 2006 and secured by a deed of trust. It is undisputed that Plaintiff failed (and continues to fail) to pay the amounts due under the (1) promissory note and (2) secured by the deed of trust against the Property. (ECF No. 86 at 2.)

Defendant Trust purports to be the holder of the promissory note and beneficiary under the deed of trust with the right to foreclose on the Property without providing the "original evidence of debt." Colo. Rev. Stat. 38-38-101(b)(III). Pursuant to Colorado law as enacted in July 2006, an entity may become a "Qualified Holder" that may foreclose on a property by providing a document by his or her attorney that either "certifies" or simply "states" that "holder claims to be a qualified holder" for the purposes of foreclosure. Colo. Rev. Stat. 38-38-101(b)(III).[2] As Colorado law does not require

---

[2] The Court notes that during the course of today's hearing, the Castle Defendants offered to provide original evidence of the debt. To date, Defendants have been relying upon a

proof that the Qualified Holder holds the original deed of trust or assignment of the promissory note, the Trust has instead relied upon a statement by its attorney that the Trust was the holder of the Property in suit in "lieu of the original evidence of debt." (ECF No. 9-4 at 1.)

In October 2011, the Trust commenced a non-judicial foreclosure action and filed a Motion for Order Authorizing Sale with the Arapahoe County District Court (the "Rule 120 Court") in Case No. 2011CV204001 (the "Rule 120 proceedings"). (ECF No. 86 at 2.) Plaintiff filed several sworn responses in opposition to the Trust's Motion for Order Authorizing Sale in November 2011, arguing that the Trust is not a real party in interest and lacks standing to foreclose. (ECF No. 21-1 at 4-5.) Plaintiff claims that "MERS never possessed right, title or interest in [her] property, can't possibly assign that right, title or interest and was never a holder in due course." (*Id.* at 5.) Plaintiff further alleges that the Trust violated certain federal statutes. (*Id.*)

Thereafter, a contested Rule 120 hearing was set for December 10, 2012. (*See* ECF No. 51-9.) On December 7, 2012, Plaintiff (represented by counsel at the time) stipulated to the entry of an order authorizing the foreclosure sale based upon "a reasonable probability of default" and agreeing to stipulate to vacate the Rule 120 hearing. (ECF No. 51-8 at 2.) The stipulation also indicated that Plaintiff "object[ed] to

---

document titled Statement By Attorney for Qualified Holder pursuant to Colo. Rev. Stat. 38-38-101. (ECF No. 9-4.) That document has been relied upon by Defendant Trust in the Rule 120 foreclosure proceedings. The issue of original evidence is relevant to Plaintiff's arguments based on her Amended Complaint. Plaintiff have until Wednesday, May 8, 2013 at 9:00 a.m. to file with the Court such evidence. It will be duly considered by this Court at the evidentiary hearing, and the parties are on notice that it could potentially have a bearing on the Court's view whether a preliminary injunction should be granted. In addition, the Court will be giving much scrutiny to which entities signed the original documentation, and in what capacity.

and contest[ed] the constitutionality of C.R.C.P. 120 and Colorado statutory provisions governing foreclosure, and [wa]s asserting her claims thereto by independent lawsuit." (*Id.* at 2.) Based upon this stipulation, the Rule 120 Court entered the order authorizing the foreclosure sale. (ECF No. 51-9.)

On October 12, 2012, Plaintiff brought this action against the Trust, the Public Trustee, and other defendants, alleging both procedural defects in the foreclosure process as well as constitutional claims of due process. (ECF Nos. 1, 29, 45.) On the same day, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 3), seeking to enjoin the foreclosure sale of the Property. On October 15, 2012, the Court denied Plaintiff's October 12th motion and ordered that Plaintiff was "prohibited from filing any further emergency motions in this action seeking to enjoin the related foreclosure proceedings in state court." (ECF No. 5.)

On February 25, 2013, the plaintiff filed a second Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 29), again seeking to enjoin the state court foreclosure of her real property. On February 26, 2013, the Court issued an Order striking Plaintiff's February 25, 2013 motion, as it was "in direct contravention of the Court's prior Order" which prohibited Plaintiff from filing "any further emergency motions in this action seeking to enjoin the related foreclosure proceedings in state court." (ECF No. 34).[3]

---

[3] The Court notes, however, that upon further review of Plaintiff's pleadings and the instant Petition (ECF No. 82), the Court is now prepared to reconsider its Orders (ECF No. 5, 34) for the purposes of the instant Petition. Plaintiff has since filed an Amended Complaint (ECF No. 45) which expressly pleads the unconstitutionality of Colo. Rev. Stat. 38-38-101 in accordance with *Ex Parte Young*, 209 U.S. 123, 126 (1908)—a claim which was not before the Court at the time of the earlier Orders.

On March 22, 2013, the plaintiff filed an Amended Complaint containing her third request for an injunction of the foreclosure action. (ECF No. 45.) Subsequently, on April 29, 2013, Plaintiff filed the instant Petition. (ECF No. 82.) On April 30, 2013, the Court ordered Defendants to file responsive briefs to the Petition, which were filed on May 1, 2013. (ECF Nos. 84, 85, 87.) On May 6, 2013, the Court held a hearing on the Petition, and after hearing from the parties, the Court issued a verbal Order granting the Petition with written Order to follow.

Jurisdiction for this Court over this matter arises under 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 42 U.S.C. § 1983.

### III.  ANALYSIS

**A.     The Court's Power to Grant Relief**

As a preliminary matter, Defendants here argue that the Court lacks power to grant relief in this case based upon three arguments: (1) the *Younger* abstention doctrine, (2) the Anti-Injunction Act, and (3) the *Rooker-Feldman* doctrine. (ECF Nos. 86, 87.) The Court will address each in turn.

1.     *Younger* Abstention

Defendants contend that Plaintiff's claims for injunctive relief are barred by the *Younger* abstention doctrine. (ECF No. 87 at 5.) *Younger* requires that federal courts abstain from exercising jurisdiction when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).

*Younger* abstention is mandatory unless extraordinary circumstances exist. *See Chapman v. Barcus*, 372 F. App'x 899, 901-02 (10th Cir. 2010).

Here, Plaintiff does not challenge conditions (1) and (3); rather, Plaintiff argues that condition (2) does not apply, because Rule 120 proceedings are not an adequate forum to assert her due process claims. Rule 120 is the most common means by which a party forecloses a deed of trust to the public trustee. The original purpose of Rule 120 was to provide a method of establishing compliance with the Soldiers' and Sailors' Civil Relief Act of 1940. *See Moreland v. Marwich, Ltd.*, 665 P.2d 613, 616 (Colo. 1983). In 1976, the Rule 120 proceedings' inquiry was expanded to include the existence of a default and/or other circumstances authorizing the exercise of a power of sale. *See Plymouth Capital Co., Inc. v. Dist. Ct. of Elbert Cnty.*, 955 P.2d 1014, 1016-17 (Colo. 1998) ("The Rule 120 hearing is not the proper forum for addressing the various and complex issues that can arise in some foreclosures. Such expansion would defeat the purpose of the streamlined public trustee foreclosure and afford little advantage over a judicial foreclosure . . . Consequently, the rule provides that parties aggrieved by the Rule 120 court's decision may seek injunctive or other relief in a court of competent jurisdiction.")

In the instant case, the Court finds that there exists a substantial question as to whether Plaintiff's due process claims can adequately be heard within the limited scope of a Rule 120 proceeding. *See Rosenfield v. HSBC Bank USA*, 681 F.3d 1172, 1190 (10th Cir. 2012). As the Court has noted, Plaintiff's federal constitutional claims were expressly reserved in the stipulation during the course of the Rule 120 proceedings. (ECF No. 51-8.)

Accordingly, the Court finds that *Younger* abstention doctrine does not apply here. *Rosenfield*, 681 F.3d at 1190 (stating that the Tenth Circuit had "no basis to conclude that Rule 120 proceedings contemplate the recognition of a [complex] TILA rescission defense"); *see also Plymouth Capital*, 955 P.2d at 1016-17.

2. Anti-Injunction Act

Defendants next argue that the Anti-Injunction Act bars Plaintiff's claims before this Court. The Anti-Injunction Act provides that "a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Here, as Plaintiff correctly notes, the Supreme Court has held that 42 U.S.C. § 1983 is an Act of Congress that falls within the "expressly authorized" exception of the Anti-Injunction Act.[4] *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972). Since Plaintiff's requested injunctive relief is sought through § 1983, the Court finds that the Anti-Injunction Act does not apply here.

3. *Rooker-Feldman*[5]

The *Rooker-Feldman* doctrine is a jurisdictional prohibition based upon 28 U.S.C. § 1257, which provides that federal review of state court judgments can be had

---

[4] Magistrate Judge Hegarty's Recommendation also concluded that "Plaintiff's § 1983 claims, to the extent they are properly pled, fell under one of the exceptions to the Anti-Injunction Act pursuant to *Mitchum v. Foster*." (ECF No. 35 at 18.)

[5] The Court notes that on Friday, May 3, 2013, Defendant Hopp filed a Motion to Dismiss based on subject matter. (ECF No. 91.) Pursuant to Fed. R. Civ. P. 12(b)(1), the Court may dismiss an action for lack of subject matter upon motion of a party or *sua sponte*.

only in the United States Supreme Court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGandy*, 512 U.S. 997, 1005-06 (holding that the *Rooker-Feldman* doctrine bars "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court based on the losing party's claim that the state judgment itself violates the loser's federal right").

In this case, only Defendant Hopp has asserted application of this doctrine. (ECF No. 91 at 5.) Without deciding whether application of the doctrine is even ripe at this juncture of the case, the Court holds that it would not apply to the outcome of a Rule 120 proceeding because such is not a final judgment subject to appellate review. Indeed, Rule 120 expressly states that "[n]either the granting nor the denial of a motion under this Rule shall constitute an appealable order or judgment" and that such a decision is without prejudice. Thus, by its very own terms, an order issued under Rule 120 does not trigger application of the *Rooker-Feldman* doctrine.

Accordingly, because this Court is competent to determine Plaintiff's constitutional claims, and since the Rule 120 Order in this case is without prejudice and not appealable to any court, the *Rooker-Feldman* doctrine has no application here.

**B.     Plaintiff's Request for Injunctive Relief**

To prevail on a motion for injunctive relief, the movant must establish that four equitable factors weigh in her favor: (1) she is substantially likely to succeed on the merits; (2) she will suffer irreparable injury if the injunction is denied; (3) her threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See Westar Energy, Inc. v. Lake*,

552 F.3d 1215, 1224 (10th Cir. 2009). If the moving party demonstrates that the second, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue [ripe] for litigation and deserving of more deliberate investigation."[6] *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006). The moving party bears the burden of persuasion as to each of the four factors relevant to injunctive relief. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *Freshpack Produce, Inc. v. VM Wellington, LLC*, 2013 WL 50433 (D. Colo., Jan. 3, 2013).

For the reasons that follow, the Court finds that Plaintiff has satisfied all the four factors for the purposes of this Petition. Because the Court finds that, until further findings can be made, the factors (2), (3) and (4) tip strongly in Plaintiff's favor, the Court concludes that Plaintiff merits the application of, and satisfies, the modified standard. *See Freshpack*, 2013 WL 50433. Because the application of the modified standard is dependent upon the outcomes of the other three factors, these will be considered first.

---

[6] The Court will refer to this standard as the modified standard. The Court notes that the continuing validity of this doctrine is questionable in light of *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365 (2008). *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1243 (D. Colo. 2009) (noting that *Winter* may affect the viability of the relaxed standard for success on the merits). However, since *Winter*, the Tenth Circuit has continued to refer to and employ the modified or relaxed injunctive relief standard. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 n.3 (10th Cir. 2009). Accordingly, the relaxed standard appears to continue to be binding law in this circuit. *See San Luis Valley Ecosystem Council v. U.S. Fish and Wildlife Servs.*, 657 F. Supp. 2d 1233, 1239 n.1 (D. Colo. 2009) ("[T]he Tenth Circuit appears to recognize the continuing validity of the modified success-on-the-merits formula notwithstanding the *Winter* decision.")

1.   Irreparable Injury

A party seeking injunctive relief "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189.

In terms of meriting temporary injunctive relief, the Court finds that Plaintiff will likely suffer irreparable harm.  First, if the Public Trustee proceeded to issue a Public Deed conducted the Public Sale, Defendant Trust would be able to seek eviction of Plaintiff from the Property.  (ECF No. 29 at 2.)  Once the Public Deed is issued, the loss of Plaintiff's home becomes essentially inevitable, which would cause her irreparable harm.  Further, while Defendants assert that Plaintiff has "a statutory right of redemption allowing her to repay the debt and reclaim the property after the foreclosure sale", Defendants fail to consider the (1) fees, (2) costs, (3) additional rent and (4) translocation that comes with being evicted from property.  The fourth point constitutes irreparable harm, which is compounded by (1)-(3).

Second, and tipping the scales further in Plaintiff's favor, injunctive relief will ensure that the *status quo* is preserved.  The Castle Defendants noted in their Response, and Defendants' counsel noted at the hearing, that Plaintiff currently holds legal title and possesses the Property until the foreclosure sale and eviction occur.  (ECF No. 87 at 10.)  As Plaintiff asserts, injunctive relief will maintain the *status quo* in that "if U.S. Bank rightfully has an interest in the property, it remains secured by the Property while this action to determine the constitutionality of the Rule 120 is pending."  (ECF No. 29 at 12.)  The Court agrees.  Allowing Plaintiff to remain in the Property until further evidence may be presented maintains the *status quo* and guards against

irreparable injury to Plaintiff's property rights that would otherwise be deprived, allegedly without due process of law. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *United States v. Adler's Creamery*, 107 F.2d 987, 990 (2d Cir. 1939) (holding that its function is to "preserve the *status quo ante* . . . upon a showing that there would otherwise be danger of irreparable injury."); *Freshpack*, 2013 WL 50433; *SIFMA v. Garfield,* 469 F. Supp. 2d 25 (D. Conn. 2007).

Finally, this Court has jurisdiction to enjoin the Public Trustee—a named Defendant to these proceedings—to prevent such irreparable harm and preserve the *status quo*. Because the Court would have no jurisdiction over the buyer of the Property, and hence could not enjoin any eviction of Plaintiff from same, temporary injunctive relief is effective only at this juncture, when one of the parties to suit is a named Defendant over which jurisdiction persists.

In sum, the Court finds that imminent, irreparable harm will occur if Plaintiff's temporary relief is not granted to enjoin the Public Trustee from taking steps which would lead to the foreclosure sale of the Property. Because the foreclosure sale is scheduled to take place on May 8, 2013, this consideration weighs heavily in Plaintiff's favor.

    2.    <u>Balance of Equities</u>

The second factor is an internal balancing test, requiring that "the possible harm to the Plaintiff if the injunction is not entered be balanced against the possible harm to the Defendant[s] if the injunction is entered." *Pelletier v. United States*, 2011 WL 2077828, at *3 (D. Colo. May 25, 2011).

As discussed above, Plaintiff will suffer irreparable harm on May 8, 2013 if the

11

injunction is not entered. By contrast, if temporary injunctive relief *is* entered, Defendant Trust is likely to suffer little harm during the limited period of injunction.

On balance, the Court finds that the threatened injury to Plaintiff outweighs the injury Defendant Trust if the foreclosure sale does not proceed on May 8, 2013. This factor weighs significantly in favor of Plaintiff—particularly during the limited, temporary relief period of 14 days.

    3.    <u>The Public Interest</u>

A party seeking a preliminary injunction must show the issuance of the injunction would not be adverse to the public interest. *Heideman*, 348 F.3d at 1188.

Here, again, this factor weighs strongly in favor of Plaintiff. The Amended Complaint is detailed in its allegations, and brings into question the role of state action and the interface between public and private players in the foreclosure process. (ECF No. 45.) Indeed, the Court considers these issues to be of significant public interest. The question of whether Colo. Rev. Stat. 38-38-101—a state statute which impacts many thousands of Colorado residents given the role of Rule 120 in foreclosure proceedings—is unconstitutional on due process grounds is manifestly a matter that would be in the public interest to determine after careful and deliberate consideration. Thus, the factor weights heavily in Plaintiff's favor and the Court finds that she has satisfied this prong of the test for the purposes of temporary injunctive relief.

    4.    <u>Questions Going to the Merits Are Serious and Substantial</u>

If the moving party demonstrates that the second, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the

merits are so serious, substantial, difficult, and doubtful as to make the issue [ripe] for litigation and deserving of more deliberate investigation." *Okla. ex rel. Okla. Tax Comm'n.*, 455 F.3d at 1113; *see San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Servs.*, 657 F. Supp. 2d 1233, 1239 n.1 (D. Colo. 2009) (noting that "the Tenth Circuit appears to recognize the continuing validity of the modified success-on-the-merits formula").

Here, given that the Court finds that the above-mentioned factors tip strongly in favor of Plaintiff at this juncture, the Court assesses the fourth factor under the modified standard. That is, the Court must determine whether Plaintiff can show that her legal theory engenders questions going to the merits that are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.

With respect Plaintiff's likelihood of success on her Ninth Claim, Defendants' argument relies upon the *Younger* abstention doctrine. The Court addressed and rejected this argument in Part III.A.1, above, and need not review it again. Indeed, much of the reasoning in the *Younger* abstention analysis given credence to the serious, substantial, difficult, and doubtful questions that persist in this case.

Rather, with respect to Plaintiff's Ninth Claim, the Court finds that she has met her burden with respect to the modified standard. (*See* ECF No. 45.) According to Plaintiff's legal theory, Colo. Rev. Stat. 38-38-101 does two things: (1) it lowers the standard of proof that a creditor must meet in order to proceed to foreclosure from original documentary evidence to an unsworn statement; and (2) it creates an additional burden upon a debtor to establish evidence of the creditor's identity which the creditor,

13

itself, is not required to locate. Whether these issues create due process concerns within the limited scope of a Rule 120 hearing creates serious constitutional questions.

Accordingly, the Court finds that the questions raised regarding the serious, substantial, difficult issues apparent in this case permit Plaintiff to satisfy the modified standard.[7]

     5.     <u>Payment of Bond</u>

Finally, Defendants argue that the plain language of Rule 65(c) prevents the Court from issuing a preliminary injunction without the posting of a bond or some security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); (ECF No. 86 at 12). Because Plaintiff's Motion does not specify her willingness or ability to provide security, Defendants argue that Plaintiff's motion is facially deficient and should be denied. (ECF No. 86 at 12.)

Defendants' briefs accurately quote the text of Rule 65(c), but fail to recognize the import of the discretion given the Court in fixing the amount of the required security.[8]

---

[7] The Court notes that in other states, cases addressing similar issues regarding the real party of interest and standing to foreclose have gone to the highest state court. *See Landmark Nat'l Bank v. Kesler*, 216 P.3d 158 (Kan. 2009) (noting that MERS does not have standing to intervene as a necessary party in a foreclosure action initiated by a junior lien holder, where MERS is not the owner of the note or mortgage); *Wells Fargo Bank, N.A. v Smith*, 392 S.W.3d 446 (Mo. 2013) (reviewing due process and separation of powers issues in an unlawful detainer proceeding); *LaSalle Bank Nat'l Ass'n v. Lamy*, 824 N.Y.S.2d 769 (N.Y. Sup. Ct. 2006) (noting that MERS does not have standing to foreclose because it does not own the note and mortgage).

[8] Even in the case Defendant U.S. Bank cites in support of its argument, *Peters v. Bank of America*, Judge Krieger differentiates between the requirements that "a plaintiff *must* show" under Rule 65(a) to obtain a temporary restraining order, and the contrasting requirements of Rule 65(c) in which "[t]he Court *may* require a party seeking a temporary restraining order or preliminary injunction to post a bond or otherwise give security." *Peters v. Bank of Am.*, 2010

14

(*See id.*)  Indeed, the case law supports broad judicial discretion even in determining whether a bond need be posted at all.  *See, e.g.*, *Cont'l Oil v. Frontier Refinery,* 338 F.2d 780 (10th Cir. 1964) (no bond required where likelihood of harm to defendant is absent); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (courts may require no bond after considering the lack of damages to defendant or "the relative cost to the opponent of a smaller bond [weighed] against the cost to the applicant of having to do without a preliminary injunction"); *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991) (collecting cases).

The Tenth Circuit has held that because the purpose of the security is to provide compensation to the enjoined party in the event of an erroneously issued injunction or ultimate success on the merits, the Court's "wide discretion" in the matter permits the issuance of an injunction without requiring any security at all where, upon making findings of fact, the Court finds that "there is an absence of proof showing a likelihood of harm."  *Cont'l Oil*, 338 F.2d at 782; *see also Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (quoting *Cont'l Oil*); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1158 (10th Cir. 2001) (quoting *Cont'l Oil* and holding that the District Court must make factual findings in choosing not to require security in order for a reviewing court to determine whether there had been an abuse of discretion).

Accordingly, after making factual findings, the Court may require a nominal security or no security at all where the moving party is heavily favored in the balance of

---

WL 2682129 at *1 (D. Colo. July 2, 2010) (emphasis added).

interests—including the showing of loss to the enjoined party (considering the length of the injunction at issue), the financial hardship on the moving party, and the impact of a security requirement on the moving party's ability to enforce her rights where a particularly important right is at issue.

In the instant case, the Court sought evidence from Plaintiff regarding her financial means. Plaintiff informed the Court that her income is irregular, and Plaintiff estimated that her salary for the previous year was not more than $20,000. Defendants' counsel noted during the hearing that Plaintiff's monthly mortgage payment was $1,213.24 per month, and agreed that $1,250 would be sufficient for the purposes of the temporary relief requested here. Accordingly, the Court finds that an unsecured bond of $1,250 is sufficient and appropriate in this case.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Petition for a motion for an Interim Preliminary Injunction (ECF No. 82) is GRANTED. The Court therefore ORDERS as follows:

1. Defendant Public Trustee of Arapahoe County, Colorado is hereby ENJOINED and RESTRAINED from undertaking any steps which would lead to a foreclosure sale of Plaintiff's Property as defined herein for 14 days from the date of this Order, in order to preserve the *status quo ante*.

2. This Interim Preliminary Injunction will dissolve on May 20, 2013 unless otherwise Ordered by the Court after an evidentiary hearing.

3. An evidentiary hearing on Plaintiff's Motion for a Full Preliminary Injunction is set for May 15, 2013 at 9:00 a.m. in Courtroom A 801.

4.  All individual Defendants in this action are to be present at the hearing on May 15, 2013 with counsel, to include Ms. Mares, Mr. Castle and Mr. Hopp. Mr. Groen has voluntarily agreed to be present at this hearing.

5.  Defendants U.S. Bank and Trust are DIRECTED to cause to be present at this hearing an agent for each such entity authorized to speak for same under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

Dated this 6th day of May, 2013.

BY THE COURT:

William J. Martinez
United States District Judge