IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:12–cv–02716–WJM

LISA KAY BRUMFIEL,

     Plaintiff,

v.

U. S. BANK,
LARRY CASTLE, in his individual and corporate capacity, and
CASTLE STAWIARSKI, LLC,
ROBERT J. HOPP, in his corporate and individual capacities,
CYNTHIA MARES, Public Trustee in her official capacity,
MERS, a division of MERSCorp, and
DOES 1-100,

     Defendants.

---

**BRIEF OF AMICI CURIAE
COLORADO CENTER ON LAW AND POLICY, INC.
AND COLORADO PROGRESSIVE COALITION**

---

COME NOW *Amici Curiae* Colorado Center on Law and Policy, Inc. and Colorado

Progressive Coalition, by and through undersigned Counsel, pursuant to this Court's Order of

May 14, 2013 (ECF No. 123), which granted *Amici* leave to file the instant brief concerning

"serious constitutional questions" stated in this Court's Order of May 6, 2013 (ECF No. 94):

> According to Plaintiff's legal theory, Colo. Rev. Stat. 38-38-101 does two things:  (1) it
> lowers this standard of proof that a creditor must meet in order to proceed to foreclosure
> from original documentary evidence to an unsworn statement; and (2) it creates an
> additional burden upon a debtor to establish evidence of the creditor's identity which the
> creditor, itself, is not required to locate.  Whether these issues create due process
> concerns within the limited scope of a Rule 120 hearing creates serious constitutional
> questions.

Order of May 6, 2013 (ECF No. 94 at 13-14).

# Contents

I.      Summary of Argument      .      .      .      .      .      .      .      .      3

II.     Constitutional Due Process Standards      .      .      .      .      .      .      4

        A.      Federal and State Due Process Precedent      .      .      .      .      .      4

        B.      Constitutional Foundations of C.R.C.P. Rule 120      .      .      .      .      5

        C.      Three-Part Inquiry      .      .      .      .      .      .      .      .      7

                1.      Private Homeowner Interests Affected      .      .      .      .      8

                2.      Risk of Erroneous Deprivation      .      .      .      .      .      10

                3.      Interests of Foreclosing Party and State      .      .      .      .      11

III.    Constitutionally Defective Statutory Provisions      .      .      .      .      13

        A.      C.R.S. §38-38-101(6)(b) Is Unconstitutional On Its Face in
                Deeming Nonexistent Evidence of Indorsement or Assignment to Exist      .      13

        B.      C. R. S. §38-38-101(1)(b)(II) and (c)(II) Are
                Constitutionally Defective in Allowing Foreclosure by
                "Certification" or "Statement" in Lieu of Evidence      .      .      .      .      17

                1.      "Full-Doc" Foreclosure      .      .      .      .      .      .      18

                2.      "No-Doc" Foreclosure      .      .      .      .      .      .      19

        C.      C.R.S. §38-38-105 is Constitutionally Defective in Not Requiring
                Judicial Control of a Rule 120 Foreclosure From Beginning to End .      .      20

                1.      C. R. S. §38-38-504 Is Constitutionally Defective in
                        Deeming a Public Trustee's Deed Prima Facie Evidence
                        of Statutory Compliance and Truth      .      .      .      .      .      22

                2.      C. R. S. §13-40-104(1)(f) Is Constitutionally Defective in
                        Allowing Eviction Based Solely on a Foreclosure Order
                        that is Not a Final Judgment as a Matter of Law      .      .      .      23

        D.      C. R. S. §38-39-102(3)(a)(I) Is Constitutionally Defective in
                Allowing "Qualified Holders" to Release a Deed of Trust
                Without Producing the Original Evidence of Debt      .      .      .      .      24

        E.      C.R.S. §38-38-101(2) and §38-39-102(3)(a)(i) Are
                Constitutionally Defective in Barring Adequate Remedies
                to Parties Damaged by Constitutionally Defective Foreclosures      .      .      25

IV.     "Real Party in Interest" Is the Threshold Question      .      .      .      .      26

V.      Conclusion      .      .      .      .      .      .      .      .      .      .      29

## I.  Summary of Argument

Provisions of Colorado's foreclosure statutes that deem non-existent evidence of indorsements or assignments to exist, and allow a foreclosure to proceed without original documentary evidence based solely on an unsworn "certification" by the foreclosing party or an unsworn "statement" by the foreclosing party's counsel, are Constitutionally defective under *Connecticut v. Doehr*, 501 U. S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) and *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

The statutes allow Colorado foreclosures to proceed based on bare conclusory claims of right to enforce a valid lien without documentary proof of same, place homeowners at the unsupervised mercy of the creditor and administrative functionaries rather than in a meaningful evidentiary hearing, create great risk of erroneous deprivations of property without due process of law, and bar adequate remedies to redress erroneous deprivations.  A foreclosure under the statutory scheme is not based on a pre-deprivation judgment, as a matter of law, yet the unadjudicated foreclosure starts a "domino" effect of post-deprivation wrongful takings that interfere with post-deprivation remedies, by allowing evictions, releases of deeds of trusts, and statutory presumptions of validity of the foreclosure deed – all before a post-deprivation action that challenges the validity of the defective foreclosure can be resolved.

Fundamental requirements of due process of law require that the statutory provisions discussed above be declared unconstitutional, that the Rule 120 hearing process be controlled by the Courts from beginning to end, that documentary evidence be required to support all elements of a Rule 120 foreclosure, and that property owners have adequate remedies to redress erroneous deprivations and be protected from wrongful takings.

## II.  Constitutional Due Process Standards

### A.  Federal and State Due Process Precedent

To assure that due process of law is provided to Colorado homeowners who face impairment or termination of real property rights, the Colorado Supreme Court has consistently aligned its public trustee foreclosure proceedings with due process requirements of the Fourteenth Amendment as interpreted by the United States Supreme Court.  E.g., *Plymouth Capital Co., Inc. v. District Court*, 955 P.2d 1014, 1015-1017 (Colo. 1998) [discussing intent of Rule 120 to accord with *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)]; *Goodwin v. District Court*, 779 P.2d 837, 842 (Colo. 1989) [citing *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell, supra; Sniadach, supra;* ruling that Rule 120 Court's resolution of issue of default adversely to homeowner, without considering evidence challenging "real party in interest," is "tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law;".]; *Moreland v. Marwich, Ltd.*, 665 P.2d 613, 616-618 (Colo. 1983) [analyzing Rule 120's ". . . due process protections against summary foreclosure actions consistent with those protections against deprivations of property without a prior judicial hearing that have received recognition in a line of modern decisions of the United States Supreme Court. . . .".]; *Valley Development at Vail, Inc. v. Warder*, 557 P.2d 1180, 1181-1182 (Colo. 1976) [Rule 120 proceedings must provide debtor an ". . . opportunity to be heard at a meaningful time or in a meaningful manner . . ." to comport with ". . . constitutional requirements of due process. . .".];

4

*Princeville Corp. v. Brooks*, 533 P.2d 916, 918 (Colo. 1975) [Rule 120 proceedings must ". . . conform to due process (citations omitted) . . . [and] comport with the modern trend to restrict Ex parte taking of property without a hearing. . .".].  The Colorado Supreme Court has not, however, addressed the Constitutionality of the statutory provisions and procedures before this Court in this case.

The Colorado Supreme Court intentionally embodied the procedures approved by the United States Supreme Court in *Mitchell, supra* in its amendment to C.R.C.P. Rule 120, for the express purpose of complying with Constitutional requirements of due process of law:

> In order to cure potential constitutional defects without compromising the efficiencies of the public trustee foreclosure proceedings, the committee recommended that a Rule 120 hearing address only that which may be constitutionally required.  *See Legislative History, supra,* at 787.

> With this goal in mind, the committee recommended that the scope of inquiry be just broad enough to encompass the procedures approved by the United States Supreme Court in *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

*Plymouth Capital, supra,* at 1017.[1]

## B.  Constitutional Foundations of C.R.C.P. Rule 120

The "procedures approved" in *Mitchell, supra* withstood due process scrutiny of the United States Supreme Court because, *inter alia*:

> . . . bare conclusory claims of ownership or lien will not suffice under the Louisiana statute.  Article 3501 authorizes the writ 'only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by verified petition or affidavit.  Moreover, in the parish where this case arose, the requisite showing must be made to a judge, and judicial authorization obtained.  Mitchell was not at the unsupervised mercy of the creditor and court functionaries.  The Louisiana law provides for judicial control of the process from beginning to end.  This control is one of the measures adopted by the State to minimize

---

[1]  The "Legislative History" referenced in *Plymouth Capital* was published in *Legislative History: C.R.C.P. Rule 120,* 8 COLO. LAW. 785 (May 1979), a highlighted copy of which is filed herewith as Exhibit A.

> the risk that the ex parte procedure will lead to a wrongful taking. It is buttressed by the provision that should the writ be dissolved there are 'damages for the wrongful issuance of a writ' and for attorney's fees 'whether the writ is dissolved on motion or after trial on the merits.' Art. 3506.
> . . .
> Documentary proof is particularly suited for questions of the existence of a vendor's lien and the issue of default. . . .
> . . .
> Louisiana law expressly provides for an immediate hearing and dissolution of the writ 'unless the plaintiff proves the grounds upon which the writ was issued.' Art. 3506.

*Mitchell, supra* at 416 U.S. 616-618, 94 S. Ct. 1904-1905 (emphasis added).

Expressly inspired by *Mitchell,* Rule 120 was drafted to (1) require a District Court to both authorize and subsequently approve a foreclosure sale; (2) require a hearing in a District Court if the homeowner challenges the foreclosure, but allow the Court to ". . . dispense with the hearing if no responsive pleading were filed and if the motion established a prima facie case for the issuance of an order authorizing sale . . .;"[2] (3) in the interest of "economy of language," the Rule presumes that ". . . a court could not be expected to find the existence of a 'default' unless a 'debt' existed, nor could the existence of a 'circumstance authorizing . . . exercise of a power of sale' be reconciled with the absence of a 'lien.';"[3] (4) acknowledging the ". . . narrow scope and summary nature . . ." of the proceeding, the Rule expressly allows ". . . relitigating in collateral proceedings the merits of issues first raised in a Rule 120 proceeding . . .," and limits the Court's purview to " . . . 'reasonable probability' rather than finality;"[4] and (5) ". . . in short . . . Rule 120 should provide a hearing on specific issues of constitutional magnitude, leaving subsidiary issues to be litigated in more conventional forums."[5] Though the Rule did not adopt *Mitchell's* approval of damages and attorneys' fees for wrongful issuance of an order authorizing sale, this

---

[2] Exhibit A at 3 (emphasis added).
[3] Exhibit A at 5.
[4] Exhibit A at 5.
[5] Exhibit A at 8 (emphasis added).

would clearly have been appropriate if the Rule had adopted all pertinent elements identified by the *Mitchell* Court.

### C.  Three-Part Inquiry

Fundamental elements of *Mitchell*'s due process inquiry were re-iterated in *Mathews v. Eldridge,* 424 U.S. 319, 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), then refocused and again applied in *Connecticut v. Doehr*, 501 U. S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), resulting in a three-part inquiry to guide this Court's present analysis.  Various types of property interests are involved in these cases, but the Supreme Court is ". . . no more inclined now than we have been in the past to distinguish among different kinds of property in applying the due process clause." *North Georgia Finishing, supra* at 419 U.S. 608, 95 S.Ct. 723 (citing *Fuentes, supra*).

In *Doehr, supra*, as in the instant case, the dispute was between private parties, one of whom sought to rely on a state statute to file a lien on the other's real property.

> Such enactments are designed to enable one of the parties to "make use of state procedures with the overt, significant assistance of state officials," and they undoubtedly involve state action "substantial enough to implicate the Due Process Clause." *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988).  Nonetheless, any burden that increasing procedural safeguards entails primarily affects not the government, but the party seeking control of the other's property. See *Fuentes v. Shevin, supra,* 407 U.S., at 99–101, 92 S.Ct., at 2003–2005 (WHITE, J., dissenting). For this type of case, therefore, the relevant inquiry requires, as in *Mathews,* first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews,* principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr, supra* at 501 U. S. 11, 111 S. Ct. 2112 (emphasis added).

### *1. Private Homeowner Interests Affected*

> For a property owner like Doehr, attachment ordinarily <u>clouds title</u>; <u>impairs the ability to sell</u> or otherwise alienate the property; <u>taints any credit rating</u>; <u>reduces the chance of obtaining a home equity loan or additional mortgage</u>; and can even place an existing mortgage in technical default where there is an insecurity clause.
>
> . . .
>
> . . . [O]ur cases show that <u>even the temporary or partial impairments</u> to property rights that attachments, liens, and similar encumbrances entail <u>are sufficient to merit due process protection</u>.   Without doubt, <u>state procedures for creating and enforcing attachments, as with liens, "are subject to the strictures of due process</u>." *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) (citing *Mitchell, supra,* 416 U.S., at 604, 94 S. Ct., 171898; *Hodge v. Muscatine County,* 196 U.S. 276, 281, 25 S.Ct. 237, 239, 49 L.Ed. 477 (1905)).

*Id.* at 501 U. S., at 11-12, 111 S. Ct., at 2113 (emphasis added).

The private interests of Colorado homeowners affected by foreclosures on their real property are even more significant than the interest affected in *Doehr, supra.*

Colorado is a "lien theory" State, which means that the homeowner holds title to the property, even while it is encumbered by a deed of trust, and the beneficiary of the deed of trust holds only a lien in the property.

> Mortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien.

C.R.S. §38-35-117.

> A deed of trust in real property given as security for a debt is a mortgage. *Morris v. Cheney,* 81 Colo. 393, 395, 255 P. 987, 988 (1927).  A mortgage is not a conveyance of a real property interest, because Colorado subscribes to a lien theory of mortgages. § 38-35-117, 10 C.R.S. (2001).  Although <u>a deed of trust does not create an ownership interest in real property</u>, it does constitute a legal or equitable interest in real property for the purposes of the section 39-11-128(1)(a) notice requirement.

8

*Columbus Investments v. Lewis*, 48 P.3d 1222, 1225 (Colo. 2002) (emphasis added).

Colorado homeowners not only face the risk of total loss of real property in a foreclosure under the statutory provisions discussed herein, by a party that is not required to produce evidence of its right to enforce a valid security interest in the property, but also face the risks of erroneous partial impairments of property rights that concerned the Court in *Doehr*.  As soon as a foreclosing party who "claims to be" the holder of the evidence of debt files the Notice of Election and Demand with the Office of the Public Trustee to commence the foreclosure, the following occurs: (1) in accordance with C.R.S. §38-38-102, the Public Trustee promptly records the Notice of Election and demand in the office of the Clerk and Recorder where the property is located, thereby creating a cloud on title; (2) in accordance with C.R.S. §38-38-103(5)(a), the Public Trustee commences advertisement of the Notice of Election and Demand, which Notice includes the names of the foreclosing party who claims to be the holder of the evidence of debt, the names of the original grantors of the deed of trust, the legal description of the property being foreclosed and the date of the sale, thereby creating a stigma for the property and the owner, diminishing the market value of the property,[6] and negatively impacting the homeowner's credit rating with credit reporting agencies.

Here, as in *Doehr, supra,* State procedures for enforcing a lien on real property, through the foreclosure procedures that are before this Court for review, are clearly "subject to the strictures of due process."  *Id*. at 501 U. S., at 12, 111 S. Ct., at 2113.

---

[6]  Distressed properties, whether bank-owned, pre-foreclosure or short sales not in foreclosure, sell at a significant discount compared to non-distressed properties. See http://www.realtytrac.com/content/foreclosure-market-report/us-foreclosure-and-short-sales-report-year-end-and-q4-2012-7609.

*2.  Risk of Erroneous Deprivation*

The risks of erroneous deprivation of protected property interests through Colorado's Rule 120 foreclosure process are substantial.  The *Doehr* Court found the risks to be substantial where enforcement of the lien was contingent on the outcome of a personal injury suit, and distinguished those from circumstances involving enforcement of a lien on a debt, as in *Mitchell, supra*.  *Doehr, supra* at 501 U. S., at 12-14, 111 S. Ct., at 2113-2114.  The factors upheld in *Mitchell, supra*, and expressly relied upon in the drafting of Rule 120 amendments, therefore control in assessing the risks of erroneous deprivations of protected property interests in Colorado foreclosures.

As shown in the detailed review of statutory foreclosure procedures, *infra,* the "certification" and "statement" provisions of Colorado's foreclosure statute bypass the fundamental documentary evidence foundations on which *Mitchell, supra*, relied[7] in upholding a Louisiana statute, in that unsworn "certifications" and "statements:"  (1) are nothing more than ". . . bare conclusory claims of ownership or lien . . .," (2) do not constitute ". . . specific facts shown by verified petition or affidavit. . .," (3) diminish the ". . . requisite showing [that] must be made to a judge . . ." to a mere unsworn certification or statement, (4) effectively place the homeowner ". . . at the unsupervised mercy of the creditor and court functionaries[8] . . .," (5) require a Rule 120 Court that strictly applies the statute to authorize and approve an unopposed foreclosure sale based on an unsworn certification or statement that "shall be deemed"[9] to constitute a missing endorsement or assignment, thereby rendering ". . . judicial control of the

---

[7]  And on which the Colorado Supreme Court relied in enacting Rule 120.
[8]  I.e., public trustees who serve as mere functionaries in accepting and recording certifications and statements, without requiring authentication of any underlying evidence referenced in the certification or statement.
[9]  §38-38-101(6)(b).

process from beginning to end. . . .” superfluous, and increasing “. . <u>the risk that the ex parte</u> <u>procedure will lead to a wrongful taking</u>. . . .,” (6) eliminate the requirement of “. . . [d]ocumentary proof [that] is particularly suited for questions <u>of the existence of a vendor's lien</u> <u>and the issue of default</u>. . . .,” and (7) do not require the foreclosing party to “. . . prove[ ] the grounds upon which the writ was issued.’” *See Mitchell, supra* at 416 U.S., at 616-618, 94 S. Ct., at 1904-1905 (emphasis added).  The risks of erroneous deprivation of real property under these procedures are substantial.

### *3.  Interests of Foreclosing Party and State*

The interests of the foreclosing party are protected in Colorado foreclosure statutes, and will not be impaired if the due process defects specified below are remedied by this Court.  The foreclosing party may still enforce a valid lien on real property under the expedited public trustee foreclosure process that has been in effect in Colorado for more than a century – they will simply have to produce <u>evidence</u> to support their claims of right, as they were required to do until legislative enactment of the problematic “certification” and “statement” provisions in 2006.  Due process requires, *inter alia*, “documentary proof” rather than “bare conclusory claims of ownership or lien” (*Mitchell, supra* at 416 U.S., at 616-618, 94 S. Ct., at 1904-1905); Colorado law required the same for more than a century before the recent enactment of the “certification” and “statement” provisions.  If foreclosing parties choose not to pursue foreclosures under Rule 120, they may pursue a judicial foreclosure under C.R.C.P. Rule 105, so their right to enforce valid liens on real property will not be impaired.

Additionally, the State's interest in providing foreclosure processes will not be impaired by the Constitutional due process remedies requested herein.

The State's substantive interest in protecting any rights of the plaintiff[10] cannot be any more weighty than those rights themselves.  Here the plaintiff's interest is *de minimis*. Moreover, the State cannot seriously plead additional financial or administrative burdens involving predeprivation hearings when it already claims to provide an immediate post-deprivation hearing.

*Doehr, supra* at 501 U. S., at 16, 111 S. Ct., at 2115 (emphasis added).

The State already provides for a Rule 120 "pre-deprivation" hearing under C.R.S. §38-38-105,[11] and Rule 120(d) expressly allows an independent "post-deprivation" action to challenge the Rule 120 order.  Accordingly, ". . . the State cannot seriously plead additional financial or administrative burdens . . ." (*id.*) as a bar to restoration of due process protections to Rule 120 proceedings.  The proceeding already exists (though in Constitutionally defective form), and will simply provide pre-deprivation due process protections to obviate the need for more expensive, and time consuming, post-deprivation proceedings.  Furthermore, Colorado due process precedent already acknowledges the need for the relief sought herein:

> While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest by showing that the parties seeking the order of sale were without authority to exercise the power of sale on which any order of sale necessarily would be predicated.

*Goodwin v. District Court*, 779 P.2d 837, 842 (Colo. 1989).

Finally, notably absent from the history of Rule 120, and from *Mitchell, Matthews,* and *Doehr,* is the approval of any process analogous to a mere "certification" by a foreclosing party, or a "statement" by that party's attorney, to substitute for evidence at any point in a Rule 120

---

[10]  The "plaintiff" in *Doehr* was the party who recorded the lien on Doehr's real property.

[11]  *See* Argument III.C., *infra.*

proceeding.  For such provisions, we must turn to the current version of C.R.S. §38-38-101, the statute of concern to this Court, and one of the statutes of concern to *Amici*.

### III.  Constitutionally Defective Statutory Provisions

A.  C.R.S. §38-38-101(6)(b) Is Unconstitutional
on Its Face in Deeming Nonexistent Evidence
of Indorsement or Assignment to Exist

The central point of entry into the statutory labyrinth is §38-38-101(6), which defines "endorsement or assignment" for the rest of the statute.  It was adopted as part of an omnibus revision to Colorado foreclosure law in HB 06-1387,[12] and refined to its present form by HB 09-1207.[13]  The undersigned have found no legislative history for these Bills, but a reading of the plain language of this section supports an inference that the Constitutional underpinnings of the Rule 120 review process were not considered by the Colorado Legislature when it enacted them.

§38-38-101(6) provides:

(6) Indorsement or assignment.  (a) Proper indorsement or assignment of an evidence of debt shall include the original indorsement or assignment or a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located.

(b) Notwithstanding the provisions of paragraph (a) of this subsection (6), the original evidence of debt or a copy thereof <u>without</u> proper indorsement or assignment <u>shall be deemed to be properly indorsed or assigned</u> if a qualified holder presents the original evidence of debt <u>or a copy thereof</u> to the officer <u>together with a statement in the certification</u> of the qualified holder <u>or in the statement of the attorney for the qualified holder</u> pursuant to subparagraph (II) of paragraph (b) of subsection (1) of this section <u>that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt</u>.

C. R. S. §38-38-101(6) (emphasis added).

Subsection (b) allows an unsworn "certification" by one who claims to be a "qualified

---

[12]  Excerpt of pertinent part of HB06-1387 filed herewith as Exhibit B.
[13]  Excerpt of pertinent part of HB09-1207 filed herewith as Exhibit C.

holder"[14] of an evidence of debt, or an unsworn "statement" by an attorney for one who claims to be a qualified holder, to serve as a complete and determinative substitute for any evidence whatsoever of an endorsement or assignment defined in subsection (a), and allows an Order Authorizing Sale to be based solely on the certification or statement, together with an uncertified copy of the purported evidence of debt.

Subsection (b) – on its face – thus bypasses the fundamental documentary evidence foundations on which *Mitchell, supra*, relied[15] in upholding a Louisiana statute, in that unsworn "certifications" and "statements:"  (1) are nothing more than "<u>. . . bare conclusory claims of ownership or lien . . .,</u>" (2) do not constitute "<u>. . . specific facts shown by verified petition or affidavit. . .,</u>" (3) diminish the "<u>. . . requisite showing [that] must be made to a judge . . .</u>" to a mere unsworn certification or statement, (4) effectively place the homeowner "<u>. . . at the unsupervised mercy of the creditor and court functionaries[16] . . .,</u>" (5) require a Rule 120 Court that strictly applies the statute to authorize and approve an unopposed foreclosure sale based on an unsworn certification or statement that "shall be deemed"[17] to constitute a missing endorsement or assignment, thereby rendering "<u>. . . judicial control of the process from beginning to end. . . .</u>" superfluous, and increasing "<u>. . the risk that the ex parte procedure will lead to a wrongful taking. . . .,</u>" (6) eliminate the requirement of "<u>. . . [d]ocumentary proof [that]</u> is particularly suited for questions <u>of the existence of a vendor's lien and the issue of default. . . .,</u>" and (7) do not require the foreclosing party to "<u>. . . prove[ ] the grounds upon which the writ was issued.</u>'"  *See Mitchell, supra* at 416 U.S. 616-618, 94 S. Ct. 1904-1905 (emphasis added).

---

[14] Defined in C.R.S. §38-38-100.3(20).
[15] And on which the Colorado Supreme Court relied in enacting Rule 120.
[16] I.e., public trustees who serve as mere functionaries in accepting and recording certifications and statements, without requiring authentication of any underlying evidence referenced in the certification or statement.
[17] §38-38-101(6)(b).

Moreover, by relieving the party seeking to terminate an owner's interest in property of the duty to produce any evidence that it is the proper party to terminate such interest, subsection (b) creates grave risk of erroneous deprivation of property, which risk led the *Doehr* Court to find the state statute at issue unconstitutional.

The significance of §38-38-101(6)(b) to the foreclosure process as a whole is made clear by the definition of "holder of an evidence of debt" in §38-38-100.3(10), which – on its face – renders all evidence-based definitions of "holder of an evidence of debt" meaningless if the foreclosing party relies on 101(6)(b) as a basis for the foreclosure.   Specifically, §38-38-100.3(10) provides:

> (10) "Holder of an evidence of debt" means the person in actual possession of <u>or otherwise entitled to enforce</u> an evidence of debt; except that "holder of an evidence of debt" does not include a person acting as a nominee solely for the purpose of holding the evidence of debt or deed of trust as an electronic registry without any authority to enforce the evidence of debt or deed of trust.  For the purposes of articles 37 to 40 of this title, the following persons are <u>presumed to be</u> the holder of an evidence of debt:
>
> (a) The person who is the obligee of and who is in possession of an original evidence of debt;
>
> (b) The person in possession of an original evidence of debt together with the proper indorsement or assignment thereof to such person <u>in accordance with section 38-38-101 (6)</u>;
>
> (c) The person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank; <u>or</u>
>
> (d) The person in possession of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as agent, nominee, or trustee or in a similar capacity for the obligee of the evidence of debt.

C. R. S. §38-38-100.3(10) (emphasis added)

Reviewing the definitions one by one, production of:  (a) the original "evidence of debt"[18] by the named obligee; or (b) the original evidence of debt with proper indorsement or assignment to the possessor as defined by §38-38-101(6)(a) [*via* the cross-reference in subsection (b)]; or (c) a negotiable instrument evidencing a debt, with evidence of negotiation to the possessor, or to bearer, or indorsed in blank; or (d) the original evidence of debt, with evidence to establish an agency or similar relationship with the named obligee;[19] would be consistent with documentation requirements under the common law and various provisions of the U.C.C.,[20] and would also meet the documentation requirements underlying *Mitchell, supra, Matthews, supra,* and *Doehr, supra*.  Under these definitions, the foreclosure would be based on "documentary proof," and not on "bare conclusory claims of ownership or lien," as required by *Mitchell, supra.*

In stark contrast, a foreclosure based on a mere "certification" or "statement" under §38-38-101(6)(b) – incorporated by reference in the definition of "holder of an evidence of debt" under the definition in §38-38-100.3(b) – allows a party who has no indorsement or assignment,

---

[18]  C.R.S. §38-38-100.3(8) defines "evidence of debt" as "a writing that <u>evidences</u> a promise to pay or a right to the payment of a monetary obligation, such as a promissory note, bond, negotiable instrument, a loan, credit, or similar agreement, or a monetary judgment entered by a court of competent jurisdiction." Standing alone, the evidence of debt is presumably the original evidence of debt, since there is no reference to a "copy" constituting evidence of debt.

[19]  Subsection (d) acknowledges the possibility that an agent, nominee, or person in a similar relationship with a named obligee may have the authority to enforce an obligation for the named obligee, but mere acknowledgement of this possibility does not prove the existence of such a relationship.  If the foreclosing party claims to be acting as an agent for another, it must also prove the existence of the agency relationship with competent evidence.  *Hancock v. Minneapolis-Moline, Inc.,* 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 *Am.Jur.2d Agency* § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship under C.R.C.P. Rule 17].

[20]  Review of pertinent U.C.C. provisions is beyond the scope of the due process issues defined by this Court's Order, and unnecessary to address the constitutional problems with §38-38-101.  For a discussion of evolving U.C.C. issues related to foreclosures, see REPORT OF THE PERMANENT EDITORIAL BOARD FOR THE UNIFORM COMMERCIAL CODE: APPLICATION OF THE UNIFORM COMMERCIAL CODE TO SELECTED ISSUES RELATED TO MORTGAGE NOTES (November, 2011) (filed herewith as Exhibit D), and Levitin et al., Comments Re: Permanent Editorial Board Report (filed herewith as Exhibit E).

yet is magically "deemed" to have one upon claiming to be a "qualified holder," to attain the status of "holder of an evidence of debt" under §100.3(b) by the "certification" or "statement" alone, thereby rendering the remaining evidence-based definitions of "holder of an evidence of debt" superfluous and meaningless, subverting *Mitchell's* due process documentary proof requirements, and violating the Court's concern with "bare conclusory claims of ownership or lien." *Id.*  Because this scheme does not adequately guard against the risk of wrongful or erroneous deprivation, §38-38-101(6)(b) does not survive Constitutional scrutiny under *Mitchell*, *supra*, and *Doehr, supra,* and is therefore Constitutionally defective on its face.

<div align="center">

B.  C. R. S. §38-38-101(1)(b)(II) and (c)(II) Are
Constitutionally Defective in Allowing Foreclosure
by "Certification" or "Statement" in Lieu of Evidence

</div>

There are two basic alternatives to initiating a Rule 120 foreclosure in Colorado.  A foreclosing party may choose to file either:  (1) the original Note and Deed of Trust [§38-38-101(1)(b) and (c)], or certified copies of same that have been recorded [§38-38-101(1)(c) and (6)(a)], or, in the alternative, (2) a certification that it is a qualified holder of the evidence of debt, or a statement by an attorney that its client is a qualified holder of the evidence of debt, with copies (not required to be certified) of the Note and Deed of Trust [§38-38-101(1)(b)(II) and (c)(II)].  The former is referred to herein as a "full-doc" foreclosure, the latter as a "no-doc" foreclosure.  If only §38-38-101(6)(b) is stricken as unconstitutional, for reasons specified above, the remaining "no-doc" foreclosure provisions would remain intact, subvert *Mitchell's* documentary proof requirements, violate the Court's concern with "bare conclusory claims of ownership or lien. . .," (*id.*), and fail to adequately reduce the risk of erroneous deprivation required by the Court in *Mathews, supra,* and *Doehr, supra.*

*1. Full-Doc Foreclosure*

Under C. R. S. §§38-38-100(3) and 38-38-101, a "holder of evidence of debt" or its

attorney may file a foreclosure with:

> (1) ". . . [t]he <u>original</u> evidence of debt, together with the <u>original</u> endorsement or
> assignment thereof, if any, to the holder of the evidence of debt . . .," (C. R. S. §38-38-
> 101(1)(b)), <u>or</u> ". . . a <u>certified copy</u> of the endorsement or assignment <u>recorded</u> in the
> county where the property being foreclosed is located. . .". C. R. S. §38-38-101(1)(b) and
> (6)(a) (incorporated by reference in 38-38-101(1)(b)); and

> (2) ". . . [t]he <u>original recorded deed of trust</u> securing the evidence of debt . . ." (C. R.
> S. §38-38-101(1)(c)) <u>or</u> a ". . . <u>certified copy</u> of the recorded deed of trust . . . .". C. R. S.
> §38-38-101(1)(c)(I).

*See* C. R. S. §38-38-101(1) & (6) (emphasis added).

A foreclosing party who meets these requirements, and produces in the Rule 120 Court

original or certified copies of recorded documents that show evidence of title and valid

indorsements or assignments to that party, would presumably comply with *Mitchell's*

requirement of documentary proof. Because this evidence can be reviewed by a judge in the

Rule 120 procedure, "full doc" foreclosures reduce the risk of wrongful deprivation consistent

with *Mathews*, *supra*, and *Doehr*, *supra*. It would also presumably comply with Colorado

common law by producing evidence that it currently holds legal title to the note [*Platte Valley

Savings & Loan v Crall*, 821 P.2d 305, 307 (Colo. App. 1991)*; American Surety Co. v. Scott*, 63

F.2d 961, 964 (10th Cir. 1933) and citations therein (under Colorado law, the one who holds the

legal title is the real party in interest)]; or that it has a full and complete assignment of the note,

valid at the time its claim arose and at the time the case was filed [*Alpine Associates, Inc. v. KP

& R,, Inc.,* 802 P. 2d 1119, 1121 (Colo. App. 1990)]. If the foreclosing party claims to be acting

as an agent for another, the Rule 120 Court should also have before it proof of the existence of

18

the agency relationship with competent evidence. *Hancock v. Minneapolis-Moline, Inc.,* 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 *Am.Jur.2d Agency* § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship]. Finally, the Rule 120 Court would presumably apply pertinent provisions of the U.C.C. to the documentary evidence.[21]  *Amici* see no Constitutional problems with Colorado's "Full-doc" foreclosure provisions (which, incidentally, governed all public trustee foreclosures prior to the amendment of Colorado foreclosure statutes by HB 06-1387).

### 2.  No-Doc Foreclosure

If a foreclosing party initiates a foreclosure under the alternative "certification" or "statement" provisions of §§38-38-101(1)(b)(II) and (c)(II) – which allow a foreclosure to be initiated with a certification or a statement of the attorney for a party who ". . . <u>claims to be</u> a qualified holder . . ." (*id.*) (emphasis added), and also allow (as an <u>alternative</u> to an " . . . original endorsement or assignment . . . to the holder of the evidence of debt . . .") ". . . <u>other proper indorsement or assignment in accordance with subsection (6)</u> . . .".  38-38-101(1)(b) (emphasis added) – the Rule 120 Court should require evidence that supports the certification or statement, as a fundamental part of its judicial control, regardless whether the foreclosure is opposed.

If §101(6)(b) is determined to be unconstitutional, for reasons specified above, a Rule 120 Court will not be bound by a statutory provision that a party "shall be deemed" to have a non-existent endorsement or assignment.  Independently of the status of §101(6)(b), a Rule 120 Court should still require evidence to support claims made in a "certification" or "statement" foreclosure under §§38-38-101(1)(b)(II) and (c)(II).  The core components of judicial control

---

[21]  As mentioned in Note 18, *supra,* it is not necessary to address application of the U.C.C. to resolution of the due process issues before this Court.

over the process from beginning to end, and documentary proof of a party's right to foreclose, must accord with fundamental requirements of due process of law.  *Mitchell, supra; Doehr, supra.*

### C.  C.R.S. §38-38-105 is Constitutionally Defective in Not Requiring Judicial Control of a Rule 120 Foreclosure From Beginning to End

The evidence-based due process foundations of *Mitchell, supra*, and *Doehr, supra,* require that a Rule 120 Court comply with *Mitchell's* requirements of ". . . judicial control of the process from beginning to end. . . ." to ". . . minimize the risk that the ex parte procedure will lead to a wrongful taking. . . .," to require ". . . [d]ocumentary proof . . . of the existence of a vendor's lien and the issue of default. . . ." and a meaningful hearing at which the foreclosing party must ". . . prove[s] the grounds upon which . . ." an Order Authorizing Sale must be based.  *See Mitchell, supra* at 416 U.S. 616-618, 94 S. Ct. 1904-1905 (emphasis added).

The Rule 120 Drafting Committee apparently shared the same concerns, in requiring a Court to enter orders both authorizing and subsequently approving a foreclosure sale.  But that is not enough.  It is clear from the "legislative history" of Rule 120 that the Committee did not anticipate that it would be necessary to remind Rule 120 Courts that claims must be supported by evidence, and that the Court must review the evidence before entering an Order based thereon.  Specifically, the Committee expressly presumed that ". . . a court could not be expected to find the existence of a 'default' unless a 'debt' existed, nor could the existence of a 'circumstance authorizing . . . exercise of a power of sale' be reconciled with the absence of a 'lien.'"[22]  Further, the Committee allowed a Rule 120 Court to ".  .  . dispense with the hearing if no

---

[22] Exhibit A at 5.

responsive pleading were filed and <u>if the motion established a prima facie case</u> for the issuance of an order authorizing sale."[23]

This history makes it clear that the Committee presumed that Rule 120 Courts would perform judicial functions of assuring the Motion stated a prima facie case – even if the foreclosure is not opposed by the homeowner – and that a party would not be allowed to exercise the power of sale in the absence of evidence that proves a valid lien.  There is nothing in the history that suggests a Rule 120 Court should allow a foreclosure – unopposed or not – to proceed without evidence that supports a prima facie case, i.e., with mere "certifications" or "statements" that are nothing more than the "bare conclusory claims of ownership or lien" disapproved by *Mitchell, supra*.

Accordingly, to comply with *Mitchell*'s due process standard, Rule 120 Courts should be required to assume judicial control over the proceedings from beginning to end, and require evidence (not mere "certifications" or "statements") to support claims of right to invoke the power of sale provisions of a Deed of Trust, whether the foreclosure is opposed or not.  C.R.S. §38-38-105 presently only requires notice of the hearing, and that the purported holder of the evidence of debt, or its attorney, ". . . obtain an order authorizing sale from a court of competent jurisdiction."  *Id.*  Though Colorado precedent requires "real party in interest" to be addressed as a threshold question if raised by the homeowner,[24] §38-38-105 is Constitutionally defective because it creates a statutory presumption that circumvents the Rule 120 Court's inherent authority to review and test evidentiary and other matters required by *Mitchell, supra.*

---

[23] Exhibit A at 3 (emphasis added).
[24] *See* Argument IV, *infra*.

*1.  C. R. S. §38-38-504 Is Constitutionally Defective*
*in Deeming a Public Trustee's Deed Prima Facie*
*Evidence of Statutory Compliance and Truth*

The Colorado Legislature not only created a hearing that allows a foreclosing party to ". . . obtain an order authorizing sale . . ." (§38-38-105) with only "bare conclusory claims of ownership or lien" (*Mitchell, supra*).  It went further in elevating bare "certifications" or "statements" to the status of "truth," and a presumption of statutory compliance, upon issuance of the foreclosure deed authorized by the Court order.

> Any deed executed by an officer or other official under this article <u>shall be prima facie evidence of compliance</u> with all statutory requirements for the sale and execution of the deed <u>and evidence of the truth of the recitals contained in the deed</u>.

C. R. S. §38-38-504 (emphasis added).

Since the deed would not exist but for the Orders authorizing and approving the sale, and the Orders are the product of a Constitutionally defective statutory presumption that replaces a requirement for scrutiny of evidence in a hearing, the statute that endows the deed with the status of prima facie evidence of truth of its recitals is also Constitutionally defective, in that it statutorily creates a "domino" deprivation of property without due process of law.  The Rule 120 Order is not a final judgment, and is entered without prejudice to the homeowner filing an independent action for injunctive or other relief to challenge the validity of the foreclosure.  A homeowner who files such an action will be faced with a defense that someone else now owns the subject home, and a claim under §38-38-504 that all recitals contained in the voidable trustee's deed are true.

Furthermore, the statute directly conflicts with more than a century of Colorado precedent under which it is clear that the homeowner is the owner of the property, the

foreclosing party held only a "lien" on the property (if the validity of the lien is proven with competent evidence), and ownership of the property cannot be determined until the conclusion of a homeowner's independent challenge to a foreclosure.  *See* explication in §II.C.1., *supra*, of Colorado law establishing the beneficiary of the deed of trust holds only a lien on the property.

In an action to quiet title under C.R.C.P. Rule 105, ". . . the pertinent date fixing the rights of the parties is the date upon which the complaint is filed . . ."  *Fastenau v. Engel,* 270 P.2d 1019, 1022 (Colo. 1954).  Even if the complaint is filed after a Public Trustee's Deed has been issued, the Public Trustee's Deed may be voided if the homeowner prevails in vacating the non-adjudicated Order Authorizing Sale on which the Public Trustee's Deed is based.

### 2. C. R. S. §13-40-104(1)(f) Is Constitutionally Defective in Allowing Eviction Based Solely on a Foreclosure Order that is Not a Final Judgment as a Matter of Law

Similarly, C. R. S. §13-40-104(1)(f) creates a "domino" deprivation of property without due process of law, by allowing a homeowner to be evicted from a home – based solely on the issuance of the public trustee's deed – even where the validity of the deed may be at issue in an independent action that challenges the validity of the Order that produced the public trustee's deed. The Statute provides, in pertinent part:

(1)  Any person is guilty of an unlawful detention of real property in the following cases: . . .

(f)   When the property has been duly sold under any power of sale, contained in any mortgage or trust deed that was executed by such person, or any person under whom such person claims by title subsequent to date of the recording of such mortgage or trust deed, and the title under such sale has been duly perfected and the purchaser at such sale, or his or her assigns, has duly demanded the possession thereof;

C. R. S. §13-40-104(1)(f).

Though a homeowner may move to enjoin the action for forcible entry and detainer (FED) in an independent action, while the validity of the foreclosure and ownership of the property is challenged, the FED alone – based on a foreclosure that is the product of a "certification" or "statement," and not based on evidence – constitutes an independent deprivation of property without due process of law under *Doehr, supra.*

<div align="center">

D.  C. R. S. §38-39-102(3)(a)(I) Is Constitutionally Defective in
Allowing "Qualified Holders" to Release a Deed of Trust
Without Producing the Original Evidence of Debt

</div>

Another "domino" in the deprivation of property without due process of law occurs after a foreclosure based on only the "certification" and "statement" provisions of §38-38-101, when a "qualified holder" is allowed by C. R. S. §38-39-102(3)(a)(I) to release the homeowner's deed of trust without producing the original evidence of debt – just as it was allowed to foreclose without the original evidence of debt.  The statute provides, in pertinent part:

> (3)(a)(I) Subject to the provisions of subparagraph (II) of this paragraph (a), with respect to either subsection (1) or (2) of this section, a holder of the original evidence of debt that is a qualified holder, as defined in section 38-38-100.3(20), may request the release of a deed of trust without producing or exhibiting the original evidence of debt. . . .

C. R. S. §38-39-102(3)(a)(I).

The risk of deprivation in this instance is not only to the homeowner (whose deed may be released before an independent challenge of the foreclosure is completed), but also to the true holder of the evidence of debt, the beneficiary to the deed of trust, to any subsequent purchaser who relies on the release of the deed of trust, and other parties who may be affected by this cloud on title.

<u>E.  C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Are</u>
<u>Constitutionally Defective in Barring Adequate Remedies</u>
<u>to Parties Damaged by Constitutionally Defective Foreclosures</u>

A core component of the Louisiana statutes upheld by the *Mitchell, supra* Court was that:

> The debtor may immediately seek dissolution of the writ, which must be ordered unless the creditor proves the grounds for issuance (existence of the debt, lien, and delinquency), failing which <u>the court may order return of the property and assess damages, including attorney's fees, in the debtor's favor.</u>

*Mitchell, supra* at 416 U.S. 606, 94 S. Ct. 1899 (emphasis added).

The Court considered the potential for an award of damages and attorneys' fees to the debtor to contribute – along with the requirement of competent documentary evidence – to minimizing the risk that a writ would be wrongfully issued.  *Id.* at 416 U.S. 609-610, 617, 94 S. Ct. 1901, 1905.  Attorneys' fees were allowed independently or as an element of damages (*id.* at 416 U.S. 622, 94 S. Ct. 1907).  Damages were ". . . not restricted to pecuniary loss.  They may encompass injury to social standing or reputation as well as humiliation and mortification." *Id.* at 416 U.S. 607, n. 8,  94 S. Ct. 1899, n. 8.

The *Doehr* Court, through four concurring justices, went further, in discussing the inadequacy of a bond to remedy damages a homeowner would suffer due to a wrongful attachment on real property.

> The necessity for at least a prompt postattachment hearing is self-evident because the right to be compensated at the end of the case, if the plaintiff loses, for all provable injuries caused by the attachment is inadequate to redress the harm inflicted, harm that could have been avoided had an early hearing been held. An individual with an immediate need or opportunity to sell a property can neither do so, nor otherwise satisfy that need or recreate the opportunity. The same applies to a parent in need of a home equity loan for a child's education, an entrepreneur seeking to start a business on the strength of an otherwise strong credit rating, or simply a homeowner who might face the

disruption of having a mortgage placed in technical default. The extent of these harms, moreover, grows with the length of the suit. . . .

Many state attachment statutes require that the amount of a bond be anywhere from the equivalent to twice the amount the plaintiff seeks. See, *e.g.*, Utah Rule of Civ.Proc. 64C(b). These amounts bear no relation to the harm the defendant might suffer even assuming that money damages can make up for the foregoing disruptions. It should be clear, however, that such an assumption is fundamentally flawed. Reliance on a bond does not sufficiently account for the harms that flow from an erroneous attachment to excuse a State from reducing that risk by means of a timely hearing.

*Doehr, supra* at 501 U.S. 22-23, 111 S. Ct. 2118-2119.

Appropriate damages, and attorneys' fees, are clearly core components of remedies for due process violations. Colorado's statutes fall dismally short of these standards, by allowing only actual economic loss, no attorneys' fees, and by expressly excluding non-economic damages. C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I).

### IV. "Real Party In Interest" Is the Threshold Question

Regarding the second question raised by this Court – i.e., whether C. R. S. §38-38-101 "creates an additional burden upon a debtor to establish evidence of the creditor's identity which the creditor, itself, is not required to locate" – *Amici* respectfully submit that this is best addressed by the fundamental rule that every action must be prosecuted in the name of the real party in interest. Applied to a Rule 120 proceeding, Colorado precedent is clear that a Rule 120 Court's resolution of the issue of default adversely to a homeowner, without considering evidence challenging "real party in interest," is ". . . tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law." *Goodwin v. District Court*, 779 P.2d 837, 841-842 (Colo. 1989).

Colorado Rule of Civil Procedure 17(a) requires that every action "be prosecuted in the name of the real party in interest." The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question. . . . Implicit in Rule 120 is the requirement that <u>the party seeking an order of sale have a valid interest in the property allegedly subject to the power of sale.</u> Unless the "real party in interest" defense is considered at a Rule 120 hearing, any order for sale might well result in the sale of property in favor of a party who has no legitimate claim to the property at all. Once a debtor in a Rule 120 proceeding raises the "real party in interest" defense, therefore, <u>the burden should devolve upon the party seeking the order of sale to show that he or she is indeed the real party in interest.</u>

*Goodwin v. District Court*, 779 P.2d 837, 842-843 (Colo. 1989) [Order Authorizing Sale vacated; remanded for determination whether purported assignment of promissory note and deed of trust were invalid due to interlineations, and whether person seeking to foreclose was, if assignment was invalid, real party in interest in Rule 120 proceeding] (citations omitted, emphasis added).

In *Goodwin,* the existence of "interlineations" on assignments of the loan documents raised evidentiary issues as to whether the assignments were valid, and, therefore, whether the foreclosing party was the party entitled to invoke the power of sale provisions in the deed of trust. Foreclosures filed in recent years by parties whose names appear nowhere on any loan documents, and who provide no evidence of any valid assignments, raise evidentiary questions more fundamental than those raised by mere "interlineations."

A "certification" by one who claims to be a "qualified holder of evidence of debt," or a "statement" by an attorney for such party, is no substitute for <u>evidence</u> that the certifying party is, in fact, the holder of the evidence of debt, with the right to invoke the power of sale contained in the deed of trust. Under *Goodwin, supra,* , if the homeowner challenges the petitioner's right to invoke the power of sale, the burden shifts to the foreclosing party to prove – with actual evidence – that it is the holder of the evidence of debt, with a right to invoke the power of sale

27

contained in the deed of trust.  Though *Goodwin* predates recent practices in the securitization of mortgages, the fundamental rules of procedure and evidence still apply.  If the name of the beneficiary on the deed of trust, and/or the name of the obligee on the note, do not match the names on the "certification" or "statement," there is an evidentiary gap that must be filled with evidence of indorsements or assignments of interests to the party attempting to foreclose.

If a Rule 120 Court refuses or declines to consider a valid challenge based on a "real party in interest" defense, the homeowner may file an independent action under Rule 105 for a complete adjudication of the foreclosing party's claims of rights and interests.[25]  The independent action, however, is no substitute for due process in the Rule 120 proceeding.

> While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest by showing that the parties seeking the order of sale were without authority to exercise the power of sale on which any order of sale necessarily would be predicated.

*Goodwin, supra* at 842 (emphasis added).

Due process of law clearly requires that a Rule 120 Court require the foreclosing party to be the real party in interest, as a threshold question.  To provide process that is due and protect against wrongful deprivations of property, this inquiry must be evidence-based, and is related to the questions of whether the foreclosing party has the right to enforce a valid, recorded security interest, as discussed above.

---

[25]  See discussion of Rule 105 proceedings, below.

**V.  Conclusion**

In *Home Building & Loan Association v Blaisdell*, 290 U.S. 398 (1934) the Supreme Court upheld a state-legislated foreclosure moratorium during the "Great Depression," to protect the interests of real property owners during a time of . . .

> . . . economic emergency which threaten[s] the loss of homes and lands     which  furnish those in possession . . . necessary shelter . . . [from] . . .    corporations,      such      as insurance companies, banks, and investment and mortgage companies . . .

*Id.* at 444-446, *passim* [foreclosure moratorium did not violate Contracts Clause].

The significance of *Blaisdell* is not that it upheld a moratorium on foreclosures, but that it did so on ". . . mortgages of unquestionable validity . . ." (*id.* 445) by parties who were ". . . not seeking homes . . . [but only] . . . the reasonable protection of their investment security. . ." (*id.* 444-446, *passim*).  In stark contrast, foreclosing parties these days aggressively seek Colorado homes, under a Colorado statute that allows them do so based on a mere "certification" or "statement" that they have a right to do so, with no evidence that they even hold a valid security interest, or are the real party in interest to enforce it.  The *Blaisdell* Court's "mortgages of unquestionable validity" may have been replaced by "certifications" and "statements" parading as evidence, but this Court's Article III jurisdiction to effect Constitutional remedies requested herein remains intact.

Fundamental requirements of due process of law require that the statutory provisions discussed above be declared unconstitutional, that the Rule 120 hearing process be controlled by the Courts from beginning to end, that documentary evidence be required to support all elements of a Rule 120 foreclosure, that property owners have adequate remedies to redress erroneous deprivations, and be protected from wrongful takings.

Respectfully submitted this 20th day of May, 2013.

THE GASPER LAW GROUP, PLLC
*(A duly-signed original is on file at the office of The Gasper Law Group, PLLC)*

/s/*Stephen A. Brunette*
Stephen A. Brunette
128 S. Tejon Street, Suite 100
Colorado Springs, Colorado  80903
Phone:  (719) 227-7779
Fax:  (719) 328-0329
Email:  stephen@gasperlaw.com;
Attorney for *Amici Curiae*


DEBRA L. FORTENBERRY, P.C.
*(A duly-signed original is on file at the office of Debra L. Fortenberry, P.C.*

/s/ *Debra L. Fortenberry*
Debra L. Fortenberry (#25114)
660 Southpointe Court, Suite 210
Colorado Springs, CO 80906
Phone:  (719) 576-4030
Fax:  (719) 579-9339
Email:  debra@lawsolutionspc.com
Attorney for *Amici Curiae*

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2013, I forwarded a true and correct copy of the foregoing by filing and serving the same using the ECF system which will send electronic notices or by U.S. Mail as indicated below:

Sean M. Hanlon
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8270
Fax: (303) 291-9144
SMHanlon@hollandhart.com

Christopher T. Groen, Esq.
Phillip A. Vaglica, Esq.
The Castle Law Group, LLC
999 18th Street, Suite 2201
Denver, CO 80202
(303) 865-1400
cgroen@cmsatty.com
vaglica@vaglica.com; pvaglica@cmsatty.com

Neal Joseph Valorz
Hopp Law Firm, LLC
333 West Colfax Avenue, Suite 400
Denver, CO 80204
720-833-8476
n.valorz@hopplawfirm.com

Christine Cachey Stretesky
Arapahoe County Attorney's Office
Littleton
5334 South Prince Street
Littleton, CO 80120-1136
303-795-4639
cstretesky@arapahoegov.com

I also certify that I caused to be served a copy of the foregoing document to the following by U.S. Mail:

Lisa Kay Brumfiel
1499 South Jasper Street
Aurora, CO 80017
(303) 278-9730

THE GASPER LAW GROUP, PLLC
*(A duly-signed original is on file at the office of The Gasper Law Group, PLLC)*

/s/*Stephen A. Brunette*
_____
Stephen A. Brunette